# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

| | |
|---|---|
| NATIONAL LABOR RELATIONS BOARD,<br><br>*Petitioner-Appellant,*<br><br>v.<br><br>INTERBAKE FOODS, LLC,<br><br>*Respondent-Appellee.* | No. 09-2245 |

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Richard D. Bennett, District Judge.
(1:09-cv-02081-RDB)

Argued: October 28, 2010

Decided: February 22, 2011

Before NIEMEYER and GREGORY, Circuit Judges,
and Damon J. KEITH, Senior Circuit Judge of the
United States Court of Appeals for the Sixth Circuit,
sitting by designation.

Affirmed in part and remanded in part for further proceedings
by published opinion. Judge Niemeyer wrote the opinion, in
which Judge Gregory and Senior Judge Keith joined.

**OPINION**

**ARGUED:** Kevin Patrick Flanagan, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Appellant. Mark Keenan, MCGUIREWOODS, LLP, Atlanta, Georgia, for Appellee. **ON BRIEF:** Ronald Meisburg, General Counsel, John E. Higgins, Jr., Deputy General Counsel, John H. Ferguson, Associate General Counsel, Margery E. Lieber, Deputy Associate General Counsel, Eric G. Moskowitz, Assistant General Counsel, Nancy E. Kessler Platt, Supervisory Attorney, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Appellant. Brennan W. Bolt, MCGUIREWOODS LLP, Atlanta, Georgia; Christopher M. Michalik, MCGUIREWOODS LLP, Richmond, Virginia, for Appellee.

---

**OPINION**

NIEMEYER, Circuit Judge:

In connection with an administrative hearing before the National Labor Relations Board ("NLRB" or "Board") on charges of unfair labor practices against Interbake Foods, LLC, the Board issued a subpoena duces tecum to Interbake, requiring it to appear, to testify, and to produce a broad array of documents at the hearing. Interbake produced some documents and asserted attorney-client and attorney work-product privileges as to others. Following the NLRB General Counsel's challenge to three of the allegedly privileged documents, the administrative law judge ("ALJ") issued an order requiring Interbake to produce the documents for *in camera* review. When Interbake refused, the Board filed this application under § 11(2) of the National Labor Relations Act ("NLRA" or "the Act"), 29 U.S.C. § 161(2), for enforcement of the subpoena, requesting that the district court order Interbake to produce the three documents *to the ALJ* for *in camera* review so

that the ALJ could "fully consider [Interbake's] claims of privilege with respect to [the three] documents."

The district court denied the Board's application by order dated September 22, 2009. It concluded first that "only an Article III court may determine whether subpoenaed documents are protected by the attorney-client or attorney work-product privileges. As a result, the ALJ's order requiring Interbake to hand over certain privileged documents for *in camera* review by him was improper." *NLRB v. Interbake Foods, LLC*, No. RDB 09-2081, 2009 WL 3103819, at *4 (D. Md. Sep. 22, 2009). It then concluded as to the three documents in question that it need not conduct an *in camera* inspection because "Interbake ha[d] met its burden of establishing that the documents [were] privileged under Federal Rule of Civil Procedure 26(a)(5)(A), and the NLRB ha[d] not articulated a good faith basis for doubting Interbake's claim of privilege." *Id.* at *4 n.1.

In this appeal from the district court's order, the Board contends that Congress authorized ALJs, in the first instance, to evaluate privilege objections to subpoenaed documents—through *in camera* review if necessary—and that "judicial review [of an ALJ's determination is] available only after objections are considered and denied by the Board." The Board also contends that the district court abused its discretion in declining to conduct an *in camera* review of the three documents in question.

We agree in large part with the Board's position that Congress conferred authority on the Board—and on ALJs as its delegatees conducting administrative hearings on behalf of the Board—to receive and evaluate evidence under the Federal Rules of Evidence and to rule on claims of privilege made with respect to that evidence. But we also hold that an ALJ's order imposed in the course of an administrative hearing, even when ruling on evidence, can only be *enforced* by an Article III court. When refusal to comply with a subpoena

and the Board's order to produce documents is based on the attorney-client or work-product privilege, the Board's recourse is to apply to the district court for an order enforcing the subpoena. In deciding whether to enforce the subpoena, *the court* must then assess the legitimacy of the claimed privilege. Thus, while we do not preclude any administrative assessment of claims of privilege, we do conclude that when an assessment of those claims is necessary to a court's determination of whether to enforce the subpoena, the assessment must be conducted by the court.

On the question of whether the district court abused its discretion in declining to conduct an *in camera* inspection of the three documents, we affirm in part and remand in part, directing the court to review the privilege claim as to the "e-mail string" attached to two e-mails that the court found privileged.

I

During the course of two unsuccessful organizing campaigns by the Bakery, Confectionery, Tobacco Workers and Grain Millers International Union, Local 68 ("the Union") at Interbake's facility in Front Royal, Virginia, the Union filed unfair labor practice charges against Interbake, and the NLRB issued various complaints against Interbake on those charges. At the hearing on those complaints before the NLRB, conducted by ALJ John T. Clark, an Interbake employee, Missy Jones, revealed that during the campaigns, she had secretly recorded conversations with Interbake colleagues and supervisors. Following an investigation into the matter, conducted by Interbake's Human Resources Manager, Jill Slaughter, Interbake fired Jones for violating company policy in (1) smuggling the recorder into Interbake's facility in violation of Interbake's electronic device policy, (2) violating company policy by admittedly recording line team meetings, and (3) violating Interbake's work conduct provisions by the manner in which she handled the recordings. The Union promptly filed an additional unfair labor practice charge, alleging that

Jones' firing was motivated by a desire to punish Jones for her Union activities and for testifying against Interbake, and the Board issued another complaint on that charge. That complaint was also assigned to ALJ Clark, who consolidated the hearing on that complaint with the hearing on the earlier filed complaints.

At the request of the NLRB General Counsel, the Board issued a subpoena to Jill Slaughter to appear before Judge Clark, to testify at the hearing, and to bring with her a broad array of documents. In the designation of documents, the subpoena demanded that, with respect to any document withheld from production on a claim of privilege, Slaughter describe the document's author, recipient, date, and subject matter. In response to the subpoena, Interbake produced approximately 320 pages of documents and withheld about 50 documents or groups of documents, asserting that they were protected by the attorney-client or work-product privilege. As requested by the Board, Interbake provided a privilege log setting forth the information requested about each document withheld. *See also* Fed. R. Civ. P. 26(a)(5)(A). At the same time, Interbake also filed a petition to revoke the subpoena as to the privileged documents, pursuant to § 11(1) of the NLRA, 29 U.S.C. § 161(1).

At the hearing, Slaughter testified that the earliest she had communicated with anyone regarding Missy Jones' termination was February 13, 2009. This testimony, however, conflicted with Interbake's privilege log, which listed two e-mails authored by Slaughter on February 9, 2009, regarding the "Missy Jones investigation" (Bates Nos. IBF100113 and IBF100427). Based on the inconsistency in dates, the General Counsel requested that ALJ Clark conduct an *in camera* inspection of those documents to determine whether they were in fact privileged. The General Counsel also sought an *in camera* inspection of handwritten notes of a telephone conversation taken by Angie Otto, a non-attorney, regarding the Jones investigation (Bates No. IBF100179). Following the

arguments of counsel and the ALJ's review of the Board's decision in *CNN America, Inc.*, 352 N.L.R.B. 448 (2008), the Judge concluded that the only proper exercise of his discretion would be to take a look at the three documents *in camera*. He said, "I feel I have to do it, I'm bound to do it, and so I can't argue against the Board because I have to follow what I think is their direction, and I do. So I have to order you to give me the [three] documents from the privilege log." After Interbake stated that it was "not prepared" to comply with the order, the Board filed this application for enforcement of the subpoena and the ALJ's order for *in camera* review.

In its application, the Board sought specifically an order from the district court directing Interbake "to comply with Judge Clark's lawful order that it produce documents IBF100113, IBF100427, and IBF100179 responsive to the Board's administrative subpoena duces tecum at such time and place as Judge Clark may designate for an *in camera* inspection so that Judge Clark may fully consider [Interbake's] claims of privilege with respect to those documents." Following a hearing, the district court denied the application by order dated September 22, 2009, and this appeal followed.

II

The Board contends that the district court erred in refusing to issue an order directing Interbake to produce the three subpoenaed documents *to ALJ Clark* for *in camera* review. This review, the Board argues, would enable the ALJ, in the first instance, to determine whether the documents are protected by a privilege. In refusing to issue the order, the district court held that "only an Article III court may determine whether subpoenaed documents are protected by the attorney-client or attorney work-product privileges." *Interbake Foods*, 2009 WL 3103819, at *4. This impasse between the Board and the district court raises the ultimate question about the division of power between the NLRB and Article III courts. The NLRB asserts that the answer will not only be important to the nar-

row focus of this case but will also have "far-reaching conse-
quences that might apply to *any* executive or independent
regulatory agency or department that relies on federal courts
for the enforcement of its administrative subpoenas."

With its enactment of the NLRA, Congress created the
Board and empowered it to prevent any person from engaging
in any unfair labor practice affecting commerce. 29 U.S.C.
§ 160(a). And to that end, Congress authorized the Board to
file complaints charging violators with unfair labor practices
and to conduct hearings on those charges. *Id.* § 160(b). Tradi-
tionally, such hearings are conducted before ALJs as dele-
gatees of the Board, who are subject to Board review. *See* 29
C.F.R. §§ 102.31(b), 102.26. The Act provides that the hear-
ings "shall, so far as practicable, be conducted in accordance
with the rules of evidence applicable in the district courts." 29
U.S.C. § 160(b). Following a hearing, the Board is empow-
ered to issue cease and desist orders, orders reinstating
employees, and orders requiring reports. Such orders are sub-
ject to judicial review and enforcement. *Id.* § 160(e), (f).

To implement this charter, the Board is given investigatory
power with the authority to conduct hearings, subpoena testi-
mony and evidence, administer oaths, examine witnesses, and
receive evidence, 29 U.S.C. § 161(1), all of which are gener-
ally carried out in the first instance by ALJs.

Specifically, as relevant here, § 11(1) of the NLRA, 29
U.S.C. § 161(1), states that "[t]he Board, or any member
thereof, shall upon application of any party to [an NLRB] pro-
ceeding[ ], forthwith issue to such party subpenas requiring
the . . . production of any evidence in such proceeding[ ] or
investigation requested in such application." The Board is also
authorized, upon the motion of a party, to revoke the sub-
poena, in whole or in part, "if in its opinion the evidence
whose production is required does not relate to any matter
under investigation, or any matter in question in such pro-
ceedings, or if in its opinion such subpena does not describe

with sufficient particularity the evidence whose production is required." *Id.* The bases for revocation stated in § 161(1) are not, however, exclusive. *See NLRB v. Interstate Builders, Inc.*, 351 F.3d 1020, 1029 (10th Cir. 2003); *Drukker Commc'ns, Inc. v. NLRB*, 700 F.2d 727, 730 (D.C. Cir. 1983). Even when a subpoena targets relevant and well-defined material, it may nonetheless be revoked if it is invalid "for any other reason sufficient in law." 29 C.F.R. § 102.31(b). In keeping with the Federal Rules of Civil Procedure, when practicable to do so, *see* 29 U.S.C. § 160(b); *NLRB v. Consol. Bus Transit, Inc.*, 577 F.3d 467, 475 (2d Cir. 2009), the Board has relied on Rules 26 and 45 in determining which "other reason[s]" are sufficient to revoke or quash a subpoena, *see Brinks, Inc.*, 281 N.L.R.B. 468, 468-69 (1986); *see also EEOC v. Md. Cup Corp.*, 785 F.2d 471, 477-78 (4th Cir. 1986) (noting the relationship between § 160(1) and Rule 45). These reasons include not only those that are immediately apparent on a subpoena's face but also those that can be determined through reference to authority, for instance the evidentiary rules of privilege. *See* Fed. R. Civ. P. 45(c)(3)(A)(iii).

But when all is said, the NLRA carefully recognizes the appropriate divide between the administrative authority to conduct hearings and issue orders and the exclusively judicial power of Article III judges to enforce such orders. The line of division tracks Supreme Court's observations in *Interstate Commerce Comm'n v. Brimson*, 154 U.S. 447, 485 (1894), abrogated on other grounds by *Bloom v. Illinois*, 391 U.S. 194, 198-200 (1968), where the Court stated:

> The inquiry whether a witness before [an agency] is bound to answer a particular question propounded to him, or to produce books, papers, etc., in his possession and called for by that body, is one that cannot be committed to a subordinate administrative or executive tribunal for final determination. Such a body could not, under our system of government, and consistently with due process of law, be invested

with authority to compel obedience to its orders by a judgment of fine or imprisonment.

Section 11(2) of the NLRA, 29 U.S.C. § 161(2), providing specifically for court enforcement of subpoenas, manifests this division of authority. It provides:

In case of contumacy or refusal to obey a subpena issued to any person, any district court of the United States . . . within the jurisdiction of which the inquiry is carried on or within the jurisdiction of which said person guilty of contumacy or refusal to obey is found or resides or transacts business, upon application by the Board shall have jurisdiction to issue to such person an order requiring such person to appear before the Board, its member, agent, or agency, there to produce evidence if so ordered . . . .

29 U.S.C. § 161(2). This structural limitation on the NLRB's authority, emanating from the Constitution's separation of powers and due process requirements, "protect[s] against abuse of subpoena power." *United States v. Bell*, 564 F.2d 953, 959 (Temp. Emer. Ct. App. 1977).

Inherent in the Board's authority to issue subpoenas, to revoke subpoenas, to examine witnesses, and to receive evidence in accordance with the Federal Rules of Evidence is the authority to make substantive rulings on the grounds for objection to subpoenas and to the admissibility of evidence at the administrative hearing. *See NLRB v. Duval Jewelry Co.*, 357 U.S. 1, 8 (1958) ("Certainly preliminary rulings on subpoena questions are as much in the purview of a hearing officer as are rulings on evidence and the myriad of questions daily presented to him"). And within this scope, Board adjudicators are authorized to make rulings on questions of privilege, as they have been doing for decades. *See*, *e.g.*, *In re Kaiser Aluminum & Chem. Corp.*, 339 N.L.R.B. 829, 829

(2003); *Taylor Lumber and Treating, Inc.*, 326 N.L.R.B. 1298, 1299-1300 (1998); *Feld & Sons, Inc.*, 263 N.L.R.B. 332, 332 (1982); *Jackson Sportswear Corp.*, 211 N.L.R.B. 891, 899 n.33 (1974); *Elias Bros. Big Boy, Inc.*, 137 N.L.R.B. 1057, 1066 n.4 (1962).

In most cases, an ALJ's rulings on privilege do not require court enforcement, because the parties either comply voluntarily with the ALJ's rulings, *see*, *e.g.*, *Patrick Cudahy, Inc.*, 288 N.L.R.B. 968, 968-69 (1988); *see also Horizon Corp. v. FTC*, No. 76-2031, 1976 U.S. Dist. LEXIS 12222, at *2-7 (D.D.C. Nov. 18, 1976), or the ALJ's rulings are made without the need for inspection of the underlying documents, *see*, *e.g.*, *Taylor Lumber*, 326 N.L.R.B. at 1299-1300. If enforcement becomes necessary, however, the parties must then turn to the district courts to obtain it. At that time, only the district court determines whether to enforce the subpoena and, in making that determination, evaluates the claims of privilege and, if necessary, conducts an *in camera* review. Moreover, in carrying out this judicial function, the court cannot delegate its task of conducting an *in camera* review to an ALJ.

This reservation of authority to Article III courts protects against abuse of the subpoena power. While judicial scrutiny of administrative subpoenas is, to be sure, limited, *see EEOC v. City of Norfolk Police Dept.*, 45 F.3d 80, 82 (4th Cir. 1995), courts do not simply order the enforcement of subpoenas as a matter of course, and certainly not blindly, *see Penfield Co. v. SEC*, 330 U.S. 585, 604 (1947) (Frankfurter, J., dissenting). Citing *Brimson*, Justice Frankfurter articulated the established principle:

> Instead of authorizing agencies to enforce their sub-poenas, Congress has required them to resort to the courts for enforcement. In the discharge of that duty courts act as courts and not as administrative adjuncts. The power of Congress to impose on courts the duty of enforcing obedience to an administrative

> subpoena was sustained precisely because courts were not to be automata in carrying out the wishes of the administrative. They were discharging judicial power with all of the implications of the judicial function in our constitutional scheme.

*Id.* at 604 (Frankfurter, J., dissenting).

Accordingly, before a court commands a party to comply with a subpoena, it must first determine that the subpoena "is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950). In short, on an application of an administrative agency for the enforcement of a subpoena in court, the respondent is guaranteed an opportunity to contest the subpoena's validity through any appropriate defense. *See Penfield*, 330 U.S. at 604 (enumerating several grounds on which "[a]n administrative subpoena may be contested"); *NLRB v. Cable Car Advertisers, Inc.*, 319 F. Supp. 2d 991, 996 (N.D. Cal. 2004) ("[A] party [to] . . . a subpoena enforcement proceeding may raise appropriate defenses once in district court"). In addition to guarding against over breadth or a lack of specificity, the right to raise appropriate defenses includes the right to vindicate claims that a subpoena improperly calls for records protected by the attorney-client or work-product privileges. *See, e.g.*, *Director, Office of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1306-07 (D.C. Cir. 1997); *NLRB v. Harvey*, 349 F.2d 900, 907 (4th Cir. 1965). Because a respondent's claim of privilege is the basis for its refusing to produce documents in response to a subpoena, it is inherent in carrying out the judicial function of deciding whether to enforce the subpoena to resolve the respondent's challenge to the subpoena. *See NLRB v. Int'l Medication Sys., Ltd.*, 640 F.2d 1110, 1115-16 (9th Cir. 1981); *Harvey*, 349 F.2d at 907 (holding that the district court was required to conduct "a full evidentiary hearing" before enforcing a Board subpoena challenged on privilege grounds).

Thus, in this case, ALJ Clark had authority, on the basis of the privilege log and the Board's response to it, to sustain the claim of privilege or to order the production of documents for *in camera* review. But when Interbake refused to comply with that order, the ALJ lacked the power to enforce it. To obtain enforcement, the Board had to apply to the district court for a judicial order of enforcement, in accordance with the established division of powers between agencies and courts.

We do not say that an ALJ does not have authority to rule on a claim of privilege. He can make such a ruling just as he could rule on any issue of evidence presented to him during the course of a hearing. But the ALJ has no power *to require the production* of documents for *in camera* review or for admission into evidence when a person or party refuses to produce them. That would require Article III power, which the ALJ does not have.

Once the Board files an application for judicial enforcement, the district court is given the authority to evaluate the parties' positions and to take any action it believes appropriate for determining whether the subpoena should be enforced. *See*, *e.g.*, *NLRB v. Silver Spur Casino*, 623 F.2d 571, 579-80 (9th Cir. 1980); *NLRB v. Indep. Ass'n of Steel Fabricators, Inc.*, 582 F.2d 135, 145 (2d Cir. 1978) (overruled on other grounds by *Charles D. Bonanno Linen Serv., Inc. v. NLRB*, 454 U.S. 404 (1982)). It can make its ruling on the basis of the privilege log and the Board's response to it, or it can order *in camera* review. But what it cannot do is order production of documents to the ALJ to conduct *in camera* review. Rather, the district court must satisfy *itself* whether, under appropriate legal standards, *it* should enforce the subpoena and thus overrule Interbake's claim of privilege.

The Board argues that Congress intended that the Board evaluate privilege objections made with respect to subpoenaed documents during the course of administrative hearings, with judicial review available *only after* objections are consid-

ered and denied by the Board. We agree with that articulation to the extent the Board is able to make those determinations, because rulings on privilege are inherent in conducting a hearing and ruling on evidence. But if, in carrying out that function, it becomes necessary for the ALJ to order the production of documents and the responding party chooses not to obey, the ALJ and the respondent reach an impasse, which only an Article III court can resolve. *See Brimson*, 154 U.S. at 486-87 (holding that compelling a witness to testify before an agency and to produce documents "cannot be directly enforced except by judicial process").

We also agree with the Board's more particular claim that the ALJ can order and conduct the *in camera* review of documents. But again, if the respondent refuses to comply with the order, the issue can only be enforced by an Article III court.

Finally, we agree with the Board's argument that *in camera* review by an ALJ is not in conflict with its role as factfinder. The agency's structure ensures sufficient independence of ALJs to conduct hearings fairly, especially when they are subject to Board review and judicial review. We note that district judges sitting without a jury are permitted to review documents *in camera*, and we see no reason to conclude that ALJs are not likewise permitted to do so.

In view of this division of authority between the Board and the courts, we disagree with the district court's broad statement that an ALJ may not "determine" whether documents are subject to the attorney-client privilege. Indeed, ALJs are often able to make that determination in the first instance. But we do agree with the court that when a respondent, on the basis of a claim of privilege, refuses to comply with an order that would enable the ALJ to conduct an *in camera* review, then only an Article III court may resolve the privilege claim as part of its decision whether to enforce the subpoena.

The Board argues, even so, that the district court should defer on assessing the privilege claim and issue an order

directing Interbake to produce the questioned documents *to the ALJ* to permit him in the first instance to conduct an *in camera* review and make the privilege ruling. It argues that § 161(1) contemplates Board action on a motion to revoke a subpoena *before* court action. As it states, "by insisting that a federal district court be the first—and essentially exclusive—forum to rule on privilege objections, Interbake and the court below reverse[d] this statutory procedure." This position, however, would require the district court to use its judicial power to enforce subpoenas blindly, without determining *itself* whether the subpoena was subject to enforcement. This type of deferral and blind ruling would amount to no less than an improper delegation of Article III power to the ALJ. *See Penfield Co.*, 330 U.S. at 604 (Frankfurter, J., dissenting) (noting that courts, when enforcing agency subpoenas, are not to be "automata carrying out the wishes of the administrative [agency]").

Moreover, the scheme suggested by the Board would also devolve into a piecemeal enforcement process such that the district court would be called upon to review each incremental step, resulting in an overly fragmented administrative proceeding. Moving in that direction would either interfere unduly with the administrative process or tend ultimately toward an improper delegation of Article III power to ALJs.

At bottom, we recognize that the Board has authority in connection with its role in investigating charges and conducting hearings to subpoena documents; to revoke subpoenas in whole or in part; to receive evidence in accordance with the Rules of Evidence in the district courts, to the extent practicable; to rule on evidence, including rulings on claims of privilege; and to order and conduct *in camera* review of documents, as required to make evidentiary determinations. But recognizing the division of power between the administrative authority of the NLRB and the judicial power of Article III courts, we hold that only an Article III court may enforce the orders and subpoenas of the Board or an ALJ as

the delegatee of the Board. Thus, when, on the Board's application, an Article III judge is called on to determine whether to enforce a Board subpoena, the court must exercise its full judicial function and decide *for itself* the validity of the subpoena and the validity of the reason given for not complying with it.

In this case, we affirm the district court's order insofar as it refused to delegate to the ALJ its responsibility to decide the issue of privilege, even though we take exception to the court's unqualified statement that only an Article III judge has authority to determine an issue of privilege.

### III

This now brings us to the question of whether the district court erred in handling and deciding Interbake's privilege claim with respect to the three documents in question. In a two-sentence footnote at the end of its opinion, the district court concluded that Interbake made a prima facie showing of privilege as to these documents and that the Board failed to present evidence sufficient to call that showing into question. The Board contends that both of these conclusions were unjustified.

We review the district court's privilege determination for abuse of discretion. *See NLRB v. Carolina Food Processors*, 81 F.3d 507, 510 (4th Cir. 1996). Under this standard of review, we will reverse the district court's ruling "only in the most extraordinary of circumstances." *Id.* (quoting *NLRB v. G.H.R. Energy Corp.*, 707 F.2d 110, 113 (5th Cir. 1982)).

A party asserting privilege has the burden of demonstrating its applicability. *See United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) (per curiam). In claiming the attorney-client privilege, a party must satisfy procedural and substantive criteria. Procedurally, the party must "expressly make the claim" and "describe the nature of the documents . . . in a

manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(a)(5)(A). Substantively, a party must show that:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or is his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Jones*, 696 F.2d at 1072 (quoting *United States v. United Shoe Machinery Corp.*, 89 F. Supp. 357, 358-59 (D. Mass. 1950)). And in claiming the work-product privilege, the party must demonstrate that the documents in question were created "in preparation for litigation." *In re Grand Jury Proceedings*, 33 F.3d 342, 348 (4th Cir. 1994) (citing *Hickman v. Taylor*, 329 U.S. 495, 509-14 (1947)). When a party relies on a privilege log to assert these privileges, the log must "as to each document . . . set[ ] forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed." *Bowne, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 474 (S.D.N.Y. 1993).

In this case, Interbake provided a privilege log in which it identified the nature of each document, the date of its transmission or creation, the author and recipients, the subject, and the privilege asserted. Although the log is not detailed, if the assertions contained in it are credited, a court could reasonably conclude that all of the elements described in Rule 26(a)(5) and the test set forth in *Jones* had been met. While

it is true, as the Board argues, that the attorney-client privilege does not apply simply because documents were sent to an attorney, *see Simon v. G.D. Searle & Co.*, 816 F.2d 397, 403 (8th Cir. 1987), Interbake's log does more than that. It also shows that the communications concerned an investigation closely linked to the ongoing NLRB adjudication. Accordingly, we conclude that the district court did not abuse its discretion in concluding that the privilege log had made a prima facie showing that the three documents in question were protected from production by the attorney-client privilege.

Likewise, we conclude that the district court was within its discretion to reject the Board's proffered reasons for doubting Interbake's preliminary showing of privilege. Once a prima facie showing of a privilege has been made, an opposing party can justify *in camera* inspection of the documents by advancing "a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged." *In re Grand Jury Investigation*, 974 F.2d 1068, 1074 (9th Cir. 1992); *see also G.D. v. Monarch Plastic Surgery*, 239 F.R.D. 641, 650 (D. Kan. 2007) (requiring a "cogent basis" to justify *in camera* review). The Board claims that it met this standard by showing a conflict between Jill Slaughter's testimony that the earliest she communicated with anyone about the Missy Jones investigation was "around February 13," 2009, and Interbake's privilege log, which identifies two e-mails that Slaughter sent on February 9, 2009 regarding the "Missy Jones Investigation." The fact that Slaughter may have testified incorrectly regarding the dates of her communications (intentionally or otherwise) does not compel an inference that her February 9 e-mails were not privileged. Especially in light of the heightened standard of review on such matters, we find this argument insufficient to justify reversal.

The Board notes additionally that even if the privilege log and the Board's response failed to justify an *in camera* inspection of the three documents in question, the privilege

log failed to disclose that the two e-mails authored by Jill Slaughter on February 9, 2009 (Bates Nos. IBF100113 and IBF100427) in fact prompted replies, forming an "e-mail string" that was not identified in the privilege log. Interbake disclosed the existence of these replies for the first time in its response before the district court. The Board notes that because two of the e-mail recipients were lawyers and two were non-lawyers, the fact that there were replies would require an independent assessment of each of the reply e-mails to determine whether the replies and any other e-mails in the string were properly protected by a claim of privilege.

Generally, each e-mail within a particular line of discussion must be analyzed separately for privilege purposes. *See In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 672-74 (D. Kan. 2005); *Muro v. Target Corp.*, 243 F.R.D. 301, 306-07 (N.D. Ill. 2007). To the extent that the replies to Jill Slaughter's February 9, 2009 e-mails were written by non-lawyers, the work-product privilege might not apply. Similarly, if the e-mails failed any of the *Jones* criteria, the attorney-client privilege might also be inapplicable. Because Interbake has not presented a document-by-document privilege analysis of the reply e-mails or offered a specific reason why the e-mail string should be treated as a group, *see In re Universal Serv. Fund Litig.*, 232 F.R.D. at 673, we conclude that the district court must assess the privilege claim with respect to each e-mail in the string to determine whether Interbake has carried its burden, *see Jones*, 696 F.2d at 1072.

In sum, we affirm the district court's privilege ruling as to the three documents identified in Interbake's privilege log but remand for further review as to any replies to Slaughter's two e-mails of February 9, 2009. On remand, the district court should determine whether these documents are privileged and, if necessary, conduct an *in camera* review for making that determination.

*AFFIRMED IN PART AND REMANDED*
*IN PART FOR FURTHER PROCEEDINGS*