**In re: ADMINISTRATIVE SUBPOENA WALGREEN CO., Movant,**

**v.**

**UNITED STATES DRUG ENFORCEMENT ADMINISTRATION, Respondent.**

No. 1:12–mc–43 (JCC/IDD).

United States District Court,
E.D. Virginia,
Alexandria Division.

Dec. 21, 2012.

Abid Riaz Qureshi, Latham & Watkins LLP, Washington, DC, for Movant.

Bernard G. Kim, U.S. Attorney's Office, Alexandria, VA, for Respondent.

### *MEMORANDUM OPINION*

JAMES C. CACHERIS, District Judge.

This matter is before the Court on Movant Walgreen Co.'s Objections [Dkt. 37] to the Magistrate Judge Ivan D. Davis' Order [Dkt. 32] denying Walgreens' Motion to Compel Return of Privileged Material [Dkt. 1] for lack of subject matter jurisdiction and the absence of a cause of action upon which to compel the Drug Enforcement Administration ("DEA") to return documents. For the following reasons, the Court will affirm the Magistrate Judge Davis.

### 1. Background

#### 1. *Factual Background*

This case arises from Magistrate Judge Davis' denial of Movant's Motion to Compel Return of Privileged Material ("the Order"). In Judge Davis' Order, the court found that "there is no subject matter jurisdiction to hear the request and no cause of action upon which to compel the Drug Enforcement Administration to return documents." (Order at 1.)

Walgreens is required, as a distributor and dispenser of controlled substances, to maintain a DEA registration. In March of 2012, DEA issued a subpoena for documents to Walgreens ("subpoena") related to their distribution facility in Jupiter, Florida, and a number of Walgreens retail pharmacies located in the state. [Dkt. 2–1 Ex A.] A Magistrate Judge thereafter issued a Warrant for Inspection in April for various records, reports, files, and other documents associated with the DEA's investigation. [Dkt. 2–1 Ex B.] Walgreens complied with the terms of the subpoena and on June 8, 2012 made its fifth and final production in response. Walgreens did not include a privilege log. An accompanying cover letter stated that two of Walgreens' in-house attorneys and an outside counsel had conducted a review of the produced materials "to verify that the materials were non-privileged and responsive to the . . . categories of requests set forth in [the DEA subpoena]." A privilege log was promised in "in due course." [Dkt. 19–4.] Among the documents produced was a series of e-mails between involving various Walgreens personnel, including Dwayne Pinon, a Walgreens corporate attorney. [Dkt. 19–16.]

On August 9, 2012, DEA wrote a letter to Walgreens requesting that it produce a privilege log. [Dkt. 19–7.] Walgreens was informed that, because it had certified it had conducted a privilege review, the DEA assumed that Walgreens was not claiming privilege over the e-mails from Mr. Pinon included in the production, totaling 61 documents that included Mr. Pinon's name. On August 10, 2012, Wal-

greens' counsel responded to DEA's letter stating that it was "currently processing this information" and that it would send "a privilege log, along with any qualifying information, as soon as possible." [Dkt. 2–3 Ex. 3.] Over the following month, the DEA states that Walgreens did not contact DEA to claim privilege over any of the e-mails involving Mr. Pinon that had been produced, and they did not produce a privilege log. (DEA Resp. at 4.) The DEA states that because Walgreens did not claim privilege during this time, and because Walgreens had stated when it completed its production that it had conducted an extensive privilege review, the DEA concluded that Walgreens was not claiming privilege over the emails from Mr. Pinon that were produced. (DEA Resp. at 4–5.) On September 13, 2012, the DEA Administrator signed an Immediate Stop Order ("ISO") for Walgreens' Jupiter facility. The ISO described and relied in part on an e-mail involving Mr. Pinon. [Dkt. 19–8.]

On September 14, 2012, after DEA had provided a copy of the ISO to Walgreens' counsel, a member of Walgreens' legal team emailed the DEA with an attached letter, authored by counsel David S. Weinstein, seeking the return of documents that Walgreens claims were "inadvertently and erroneously produced" on June 8. [Dkt. 19–11.] The letter is dated September 10, 2012. [*Id.*] Walgreens did not email this letter to DEA prior to September 14. [Dkt. 19–12.] The letter was postmarked September 12. (DEA Resp. at 5.) The parties do not dispute, and the record shows, that DEA did not have it when the ISO was signed. [Dkt. 19–10.] Walgreens produced a privilege log on September 27, 2012. [Dkt. 19–12.]

Although DEA has not returned the e-mails in dispute, it communicated to Walgreens on October 3, 2012, its decision not to "voluntarily publicly release the ISO" or to "make further affirmative use of the claimed material pending a determination of the privilege issue," and to "safeguard the email and the ISO as it does for all evidence collected during an investigation." [Dkt. 19–13.] On the same day, October 3, Walgreens filed the present Motion seeking an order compelling DEA to return the allegedly privileged documents. On October 10, 2012, Walgreens also filed a petition for review of the ISO in the D.C. Circuit. [Dkt. 19–19.] Walgreens also intends to contest the allegations in the ISO during an upcoming administrative hearing before DEA. [Dkt. 19–14; 19–15.] Walgreens' counsel has stated that the hearing is scheduled for January 7, 2013.

2. *Procedural Background*

Movant's original Motion to Compel Return of Privileged Material [Dkt. 1] was filed on October 3, 2012. They also filed a Memorandum in Support. [Dkt. 2.] The action was referred to Magistrate Judge Davis. On November 9, 2012, Judge Davis entered an Order dismissing Movant's Motion to Compel for lack of subject matter jurisdiction and failure to state a cause of action. [Dkt. 32.] On November 16, 2012, Movant filed the present Objections to the Order Denying their Motion to Compel. [Dkt. 37.] On December 7, 2012, the DEA filed a Response to Walgreens' Objections. [Dkt. 39.] On December 12, 2012, Movant filed a Reply to the DEA's Response. [Dkt. 41.]

2. **Standard of Review**

There is some disagreement as to what standard of review should be employed in reviewing the position of the Magistrate Judge. In their Objections memorandum, Walgreens suggests that a *de novo* standard is appropriate because the Motion to Compel was dispositive of the present business. At the magistrate level, Judge Davis observed that, because there was no

pending case or proceeding underlying Walgreens' Motion to Compel, ruling on the Motion was not be dispositive. Tr. 27:13–15. If that were the case, the clearly erroneous or contrary to law standard would seemingly apply. Thus, in order to decide this question, the Court must first determine whether a motion to compel is, in this context, a "dispositive" or "non-dispositive" motion within the meaning of Rules 72(a) and 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1).

Rule 72(a) of the Federal Rules of Civil Procedure allows a magistrate judge to hear and decide non-dispositive motions. If a party wishes to object to a magistrate judge's order, he may do so within ten days and the district court will review the magistrate judge's order under a clearly erroneous or contrary to law standard. Rule 72(b) provides that a magistrate judge can make only recommendations as to dispositive motions and that the district judge, upon a *de novo* review, makes the final decision. Neither Rule 72(a) nor 72(b) defines the term "dispositive" beyond stating that a magistrate judge may issue an order in a case "not dispositive of a claim or defense of a party" and that he may issue only a recommendation in a case "dispositive of a claim or defense of a party . . . ."

■ The Court observes here that neither the ruling of this Court as it relates Walgreens' Objections, nor the original ruling of Judge Davis, dispose of Walgreens' "claim or defense" of privilege over the documents in questions. Walgreens is still capable of claiming privilege over the documents. Furthermore, neither this Court's ruling, nor that of Judge Davis, forecloses Walgreens from filing a motion to quash the subpoena or a motion for a protective order.

In filing the instant Motion to Compel, Walgreens seeks a favorable ruling upon the issue of privilege, through which to they would be able compel the return of documents upon which the DEA has relied in issuing the ISO for Walgreens' facility, thereby sidestepping the necessity of mounting a direct challenge to either subpoena or the ISO. Though the case law cited by and relied upon by Walgreens seemingly represents an entreaty to the Court to construe its jurisdiction over the present Motion as similar to its ability to hear a motion to quash an administrative subpoena, this case does not present a situation wherein it is appropriate to treat the present Motion as a motion to quash. The Court simply does not find it appropriate to do so when the Movant, by its own admission, has stated that "[they] don't have a motion to quash here." Tr. 7:20–21.

In essence, the Movant has made an evidentiary motion, and seeks a ruling as to privilege, yet has no underlying case, claim, or cause of action before this Court. While there is authority that suggests the applicability of either standard, the Court is confident that, whatever the standard employed, the result is the same with regard to the present Motion. Thus, the Court will review the proceedings *de novo*.

### 3. Analysis

#### 1. *Jurisdiction under 28 U.S.C. § 1346(a)(2)*

The Supreme Court has recognized that "[i]t is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). Walgreens asserts that the Court has subject matter jurisdiction over this miscellaneous action pursuant to 28 U.S.C. § 1346(a)(2). The Tucker Act actually consists of two parts: 28

U.S.C. § 1491 and 28 U.S.C. § 1346(a)(2). The latter section, commonly known as the "Little Tucker Act," reads:

> (a) The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:
>
> (2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort, except that the district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort which are subject to sections 7104(b)(1) and 7107(a)(1) of title 41. For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.

28 U.S.C. § 1346(a)(2). From the outset, the Court notes that that the essence of the relief sought by Movant is injunctive in nature and that Movant is not seeking monetary relief. Indeed, there is no component of monetary relief being sought here whatsoever. Standing alone, Fourth Circuit precedent holds that 28 U.S.C. § 1346(a)(2) does not itself confer jurisdiction where there are no monetary damages or a monetary component of the relief sought upon which to premise jurisdiction under the Tucker Act. *See Randall v. United States*, 95 F.3d 339, 348 (4th Cir. 1996).

However, that is not the end of the present inquiry. Movant argues that because the instant "proceeding ... arises from federal agency action ... the 1976 Amendments to the Administrative Procedure Act ('APA') govern." (Mov. Objs. at 3.) The APA allows "[a] person suffering legal wrong because of agency action" to seek judicial review of the agency action. 5 U.S.C. § 702; *see Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882–83, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). The Supreme Court has stated that it is "undisputed that the 1976 amendment to [5 U.S.C.] § 702 was intended to broaden the avenues for judicial review of agency action by eliminating the defense of sovereign immunity in cases covered by the amendment...." *Bowen v. Massachusetts*, 487 U.S. 879, 891–92, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988).

Under the APA, a court can review an agency action only when a statute makes the action reviewable or the action was a "final agency action for which there is no other adequate remedy." 5 U.S.C. § 704; *see Lujan*, 497 U.S. at 882, 110 S.Ct. 3177. If the challenged agency action is not "final" under the APA, a court must dismiss the complaint for lack of subject matter jurisdiction. *Invention Submission Corp. v. Rogan*, 357 F.3d 452, 460 (4th Cir.2004). The party asserting jurisdiction under the APA carries the burden of proving the existence of such jurisdiction by showing that the challenged action constitutes a "final agency action." *Shipbuilders Council of Am., Inc. v. United States Dep't of Homeland Sec.*, 481 F.Supp.2d 550, 555 (E.D.Va.2007) (citation omitted). The "core question" as to finality is whether an action marks the completion of "[the agency's] decision[-]making process, and whether the result of that

process is one that will directly affect the parties." *Franklin v. Massachusetts*, 505 U.S. 788, 797, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992). The Supreme Court explained that

> two conditions must be satisfied for agency action to be 'final': First, the action must mark the consummation of the agency's decision[-]making process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.

*Bennett v. Spear*, 520 U.S. 154, 177–78, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997)(internal quotations and citations omitted). Stated differently, the factors relevant to determining whether an agency action is "final" under the APA are explained in the following analogous terms: "(1) whether the action is a definitive statement of the agency's position; (2) whether the action had the status of law and immediate compliance with its terms was expected; [and] (3) whether the action had a direct impact on the day-to-day business of the plaintiff. . . ." *Trinity Indus., Inc. v. Herman*, 173 F.3d 527, 532 (4th Cir.1999).

■ Through this framework, the present inquiry becomes whether the agency action was the consummation of the agency's decision-making process and determined Walgreens' rights and obligations. Here, Movant has not carried their burden regarding the proposition that the DEA's mere possession of the documents Walgreens considers privileged constitutes a final agency action. The Court notes that through this freestanding Motion to Compel, Walgreens is not challenging the ISO itself or moving to quash the administrative subpoena. The Court reiterates that Walgreens has conceded as much, stating "[w]e don't have a motion to quash here."

Tr. 7:20–21. Rather, Movant seeks from this Court a favorable ruling upon the issue of privilege, by means of which to compel the return of the subject documents they produced in complying with the administrative subpoena. Rather than challenging the subpoena itself, according to Walgreens, "the only issue at stake in this proceeding is whether the [allegedly privileged] material can be used by DEA as evidence." (Mov.'s Reply [Dkt. 29] at 15.)

Framing the inquiry in such a manner, Walgreens is still capable of claiming privilege over the documents. From the outset, it is clear that Walgreens has not exhausted their administrative remedies as to the issue. DEA regulations provide an opportunity for Walgreens to "object[ ] to the admission or rejection of any evidence." 21 C.F.R. § 1316.60. Indeed, an ALJ can rule on a claim of privilege "just as he could rule on any issue of evidence presented to him during the course of a hearing." *N.L.R.B. v. Interbake Foods, LLC,* 637 F.3d 492, 499 (4th Cir.2011). Appeal to the DEA Administrator of an adverse ruling is also allowed. 21 C.F.R. § 1316.62. It is clear that Walgreens intends to pursue action at the administrative level, having scheduled an administrative hearing before the DEA to contest the allegations in the ISO. This hearing is scheduled for January 7, 2013.

Merely alleging the DEA Administrator initially refused to return the documents does not carry to connotation that the DEA's ultimate position as to privilege is a foregone, adverse conclusion. There has also been a showing that the DEA will not "voluntarily publicly release the ISO," will not "make further affirmative use of the claimed material pending a determination of the privilege issue" and to "safeguard the email and the ISO as it does for all evidence collected during an investigation."

[Dkt. 19–13.] The Court believes this weighs against the notion that there has been a "final agency action."

This Court finds that Movant has not carried their burden of establishing that a "final agency action" exists, and thus finds that there is a lack of subject matter jurisdiction under the APA.

### 2. Jurisdiction under 21 U.S.C. § 876(c)

██ Movant Walgreens has also asserted that this Court has subject matter jurisdiction over this action through 21 U.S.C. § 876(c). That section reads:

(c) Enforcement

In the case of contumacy by or refusal to obey a subp[o]ena issued to any person, the Attorney General may invoke the aid of any court of the United States within the jurisdiction of which the investigation is carried on or of which the subp[o]enaed person is an inhabitant, or in which he carries on business or may be found, to compel compliance with the subp[o]ena. The court may issue an order requiring the subp[o]enaed person to appear before the Attorney General to produce records, if so ordered, or to give testimony touching the matter under investigation. Any failure to obey the order of the court may be punished by the court as a contempt thereof. All process in any such case may be served in any judicial district in which such person may be found.

21 U.S.C. § 876(c). It is accepted that the scope of judicial review in an administrative subpoena enforcement proceeding is "quite narrow." *United States v. Golden Valley Elec. Ass'n*, 689 F.3d 1108, 1113 (9th Cir.2012). From the text of the statute, it is clear that it provides the Attorney General with the right to invoke federal district court jurisdiction to enforce an administrative subpoena. However, the present action is not an enforcement action brought on behalf of the Government or an agency thereof compelling Walgreens' compliance. This proceeding simply does not entail the same procedural posture as an enforcement action, and a cursory reading of the text demonstrates that Congress has not afforded Movant the right to bring this challenge as if it were similarly situated to the Government in its latitude to bring enforcement actions to compel compliance. Indeed, Walgreens concedes as much, stating that "the statute makes no provision for a recipient to challenge government conduct in administering the subpoena." (Mov. Obj. at 5.)

However, Walgreens argues that § 876(c) should be interpreted as allowing subject-matter jurisdiction here, and cites cases where courts have read into the statute subject matter jurisdiction over actions of a recipient to quash a subpoena.

Walgreens argues that the case of *Greene v. Philadelphia Housing Authority*, 789 F.Supp.2d 582 (E.D.Pa.2011), demonstrates a sufficiently analogous situation in which a court permitted subject-matter jurisdiction. In that case, Mr. Greene, a former executive director of the Philadelphia Housing Authority ("PHA") and a third-party to the subpoena, moved to enjoin the PHA from producing in response to a subpoena issued by the United States Department of Housing and Urban Development ("HUD") certain unredacted legal invoices that might include notes from Mr. Greene's meetings with counsel that took place during his tenure as executive director that related to matters upon which counsel had represented Mr. Greene in his individual capacity. Mr. Greene argued that the production of those legal invoices concerning the meetings might include documents subject to his attorney-client privilege. However, Mr. Greene agreed in that the PHA could release to HUD those legal invoices identified in the HUD sub-

poena that only represented Mr. Greene in his official capacity. *Id.* at 587.

Regarding the legal invoices that related to matters in which Mr. Greene was represented in an individual capacity, the judge in that case framed Mr. Greene's motion as a motion to quash the production of those documents, reasoning that it had subject-matter jurisdiction as a consequence of its jurisdiction to quash the subpoena. *Id.* However, rather than ruling upon the privilege of those documents, and thereafter compelling their return, the Judge ordered that PHA should "review the remaining legal invoices identified in the HUD subpoena and bring to [the judge's] attention any that may contain privileged information." *Id.*

However, this Court reiterates that it is inappropriate to interpret the present motion as a motion to quash. Walgreens has conceded as much, stating "[w]e don't have a motion to quash here." Tr. 7:20–21. A party to the subpoena, Walgreens seeks a positive ruling on the issue of privilege from this Court as a means effectuate the return of materials that have already produced to the DEA in compliance the subpoena and over which there was no claim of privilege at the time they were produced. Here, Walgreens has already undertaken complying with their terms and simply seeks a ruling to disallow the evidentiary use of some documents that they produced through their compliance. There is no challenge to the subpoena itself, and thus the instant action does not present a factually analogous situation to *Greene*, which itself does not represent controlling precedent.

Movant has also suggested that there is *Leedom* jurisdiction in this case, citing *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958). In *Leedom*, the Supreme Court recognized a nonstatutory exception to the § 704 finality requirement

in cases in which agencies act outside the scope of their delegated powers and contrary to "clear and mandatory" statutory prohibitions. *Leedom*, 358 U.S. at 188–90, 79 S.Ct. 180. The finality exception in *Leedom* is limited. It is properly invoked only where the absence of federal court jurisdiction over an agency action "would wholly deprive" the aggrieved party "of a meaningful and adequate means of vindicating its statutory rights." *Bd. of Governors, Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991). The Fourth Circuit has stated that the exception has "narrow limits" and has "construed the exception accordingly, finding *Leedom* jurisdiction appropriate only where there is a "strong and clear demonstration that a clear, specific and mandatory [statutory provision] has been violated." " *Long Term Care Partners, LLC v. United States*, 516 F.3d 225, 234 (4th Cir.2008).

Here, Movant has failed to demonstrate that DEA has violated "clear and mandatory statutory prohibitions." Further, Movant has not articulated any "statutory right" that it cannot vindicate through other means, such as those previously discussed in this Opinion. *See Long Term Care Partners*, 516 F.3d at 233. Indeed, Walgreens intends to contest the allegations in the ISO during an upcoming administrative hearing before DEA on January 7, 2013. As previously discussed, an ALJ may hold an evidentiary hearing on the issue of privilege. Furthermore, Walgreens also filed a petition for review of the ISO in the D.C. Circuit on October 10, 2012.

### 3. *Jurisdiction under 28 U.S.C. §§ 1331 and 1361*

■■■■ 28 U.S.C. § 1331 confers original jurisdiction in the district court of all civil actions arising under the Constitution,

laws, or treaties of the United States. It is well-settled that Section 1331 "is not a general waiver of sovereign immunity. It merely establishes a subject matter that is within the competence of federal courts to entertain." *Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 4 (1st Cir.1989) (citation omitted); *Humphreys v. United States*, 62 F.3d 667 (5th Cir.1995) (holding that 28 U.S.C. § 1331, by granting district courts jurisdiction over constitutional claims, does not thereby waive sovereign immunity). As the Supreme Court has recognized, "[i]t is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). Furthermore, "a waiver of the traditional sovereign immunity 'cannot be implied but must be unequivocally expressed.'" *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) (quoting *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)).

█ .Here, Movant's Motion has been based upon Federal Rule of Civil Procedure 26(b)(5)(B). It is evident that they are not a treaty. Furthermore, the Federal Rules of Civil Procedure are plainly not a statute. *See, e.g., Apostolic Pentecostal Church v. Colbert*, 169 F.3d 409, 414–15 (6th Cir.1999). It is axiomatic that they do not create or withdraw federal jurisdiction. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 370, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978).

█ Movant suggests that the Fourth Amendment has been implicated by the DEA's failure to return the allegedly privileged material, relying primarily upon *Hell's Angels Motorcycle Corp. v. County of Monterey*, 89 F.Supp.2d 1144, 1153 (N.D.Cal.2000) *aff'd sub nom. Hell's Angels Motorcycle Corp. v. McKinley*, 354

F.3d 1000 (9th Cir.2004) *opinion amended and superseded on denial of reh'g*, 360 F.3d 930 (9th Cir.2004). In *Hell's Angels*, the court ruled that the Fourth Amendment rights of a third-party group whose records were seized by state law enforcement officials were violated when the property was transferred from state to federal officials, pursuant to administrative subpoena issued by federal government, without advance notice to claimants and provision for claimants to oppose the transfer. The district court distinguished the situation of the third-party, stating that "[u]nlike the owner of documents to whom a subpoena is directed in the ordinary case, plaintiffs here had no opportunity to object to enforcement and demand a judicial evaluation of the subpoena." *Id.* at 1150. The present case is, in fact, the "ordinary case" in which Movant had an opportunity to object to the enforcement of the subpoena before complying with it. In such a case, the court in *Hell's Angels* stated that "[t]here, additional protection is unnecessary." *Id.* at 1153. Further, the Court notes that Movant is not here objecting the enforcement of the subpoena itself. The present Motion is not a motion to quash. Rather, through this freestanding Motion to Compel, Walgreens is attempting to effectuate the return of materials that they consider privileged that have already produced by their own accord to the DEA in compliance with the subpoena and over which they had not claimed privilege at the time they were produced. Furthermore, there has not been any determination or even evaluation of the merit of Walgreens' claim of privilege over materials that were concededly produced voluntarily in compliance with the subpoena.

█ Under 28 U.S.C. § 1361, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of

the United States or any agency thereunder to perform." Mandamus is an extraordinary means of providing a remedy where a plaintiff has exhausted all other avenues of relief and the defendant owes him or her a clear, non-discretionary duty. *Total Care, Inc. v. Sullivan,* 952 F.2d 397 (4th Cir.1991). From this Court's foregoing analysis, it is clear that Movant has not exhausted all other avenues of relief, and there has not been any determination or even evaluation of the merit of Movant's claim of privilege. At the time Movant produced the materials to the DEA, they had not claimed privilege over the documents, and represented to the DEA that they had reviewed the contents of their production in order to ascertain whether they were privileged. Walgreens did not produce a privilege log until months after the production, despite the inquiries of the DEA, and only conveyed their claim of privilege to the DEA after the documents had been put to use for the purposes of enforcement. Further, the inquiry as to whether the documents are actually privileged has not been determined or foreclosed. As this Court has stated previously, an ALJ can rule on a claim of privilege "just as he could rule on any issue of evidence presented to him during the course of a hearing." *Interbake Foods,* 637 F.3d at 499. Appeal to the DEA Administrator of an adverse ruling is permitted. 21 C.F.R. § 1316.62. Therefore, given that there has yet to be an evaluation of Movant's privilege claim, it cannot be fairly said that a clear, non-discretionary duty is owed to return the documents.

#### 4. *Absence of an Underlying Claim*

Regarding Judge Davis' denial of their Motion to Compel for failure to assert a cause of action upon which to compel the DEA to return the documents in question, Walgreens concedes that they have not stated a cause of action but asserts:

> Walgreens is not required to assert a cause of action against the United States in connection with this miscellaneous action arising from an administrative subpoena. Just as the government could file a motion to enforce the administrative subpoena in federal court without asserting a cause of action, Walgreens may pursue its motion to compel without making a claim against the government.

(Mov. Obj. at 9.) However, Congress has expressly provided the DEA with the right to bring an independent action before the district to compel the enforcement an administrative subpoena; an analogous right has not been provided to Walgreens, to say little of a freestanding Motion to Compel the return of documents that were produced through compliance with an administrative subpoena and over which no claim of privilege existed at the time the documents were produced. Indeed, while Walgreens has cited cases wherein some courts have ultimately heard pleadings interpreted as constituting in part motions quash an administrative subpoena, it is clear that Walgreens is not moving to quash the administrative subpoena. Their unequivocal statement of as much is simply unassailable, as they have stated that "[w]e don't have a motion to quash here." Tr. 7:20–21.

 Here, there is no pending proceeding and Walgreens is seeking neither a preliminary injunction, nor a temporary restraining order, nor attempting to quash the administrative subpoena. In essence, Walgreens seemingly seeks to force this Court to intervene and render a determination as to the privilege of documents, thereby seemingly undercutting administrative action without directly challenging the subpoena or the ISO. There is no substantive statutory authority that provides Walgreens with the ability to make a freestanding Motion to Compel via Rule

26(b)(5)(B) in this context. This Court declines to create such ability absent any foundational proceeding or enabling precedent.

### 4. Conclusion

For the foregoing reasons, the Court affirms Magistrate Judge Ivan D. Davis' Order denying Walgreens' Motion to Compel the Return of Privileged Material.

An appropriate Order will issue.