ANNUNZIATA, Judge.
Following a jury trial, appellant, Tyrone Christopher Scott, was convicted of second degree murder and robbery. Appellant contends that the trial court erred in limiting the scope of his cross-examination of one of the Commonwealth’s witnesses on the issue of that witness’ bias or motive to testify. We find that the trial court erred, but, under the facts of this case, we find the error to have been harmless and affirm appellant’s convictions.
I.
Zenobia Jones and Tamika Young testified for the Commonwealth concerning the events in question. They testified that Jones, Young, Kimberly Taylor and appellant spent the day drinking and taking drugs at Jones’ home. Joseph Ford *39 joined the group early the same evening. During the course of the evening, a dispute arose over Ford’s payment for sexual acts he engaged in with Young.
Young had decided to forego payment when Taylor intervened and demanded that Ford pay Young. Taylor and Ford began fighting and eventually drew the attention of appellant, who was Taylor’s ex-boyfriend. Together, appellant and Taylor fought Ford to the ground, where they continued to hit him. Ford was released when he agreed to pay, but shortly thereafter he ran away.
Taylor and appellant gave chase, caught up with Ford and resumed hitting him, this time more aggressively. Taylor hit Ford with a glass object as appellant held Ford down. Appellant and Taylor were trying to get money from Ford, which Ford held in his mouth. When it appeared Ford would not give her any money, Taylor “got mad” and stated, “shoot, forget it. I’m just going to kill him.” Taylor went to the kitchen and returned with an object which she used to hit Ford while appellant continued to hold Ford down. Appellant resumed hitting Ford, stating he was going to get the money. Taylor continued hitting Ford and eventually strangled him with a belt. Appellant held Ford while Taylor strangled him. Ford fell to the couch, and appellant and Taylor dragged him outside. After returning inside, appellant gave Taylor some blood-stained money. Ford was killed in the course of the fight. Later that evening, appellant told his sister, “we just killed a dude.”
Linwood Wiggins, Jr. also testified for the Commonwealth. Wiggins testified that, while in jail, appellant told him he had beaten Ford in the head with an ashtray because Ford had $1,000. Wiggins further testified that he had been convicted of five or six felonies as well as misdemeanors involving stealing.
On cross-examination, Wiggins admitted that his criminal record reflected seven felony convictions. Wiggins also testified that he faced a pending sentencing proceeding on three *40 felony charges in a different judicial circuit. Wiggins stated his understanding that the sentence he would receive for his recent convictions would likely relate to his prior convictions. Wiggins stated that although he was not “promised” anything, the Commonwealth had agreed to make Wiggins’ sentencing judge “aware” of his cooperation. Wiggins agreed that he was testifying, hoping “they don’t give me the 15 years the charges carry.”
Appellant’s counsel then attempted to ask Wiggins about the date and nature of each of his felony and misdemeanor convictions, but, upon the Commonwealth’s objection, the court ruled that only inquiry into felonies and misdemeanors involving moral turpitude was relevant. In a subsequent proffer, appellant’s counsel attempted to clarify his position. He argued that he was entitled to inquire into the number and nature of each of Wiggins’ prior convictions on the theory that the nature of each of Wiggins’ prior convictions would demonstrate the extent of his motive to testify against appellant, in the “hope” of receiving leniency at his forthcoming sentencing hearing. The court was unpersuaded.
Although the court’s initial ruling on the matter was not clear, it subsequently stated that it did not intend to preclude appellant’s counsel from eliciting testimony concerning the nature of Wiggins’ prior felonies and misdemeanors involving moral turpitude. Following the court’s clarification, counsel argued that he should not be limited to inquiring about prior felonies and misdemeanors involving moral turpitude, although he stated he would “prefer that middle ground rather than no ground.” However, appellant’s counsel made no further attempt to elicit testimony concerning Wiggins’ prior convictions for felonies and misdemeanors involving moral turpitude. The court also refused counsel’s request to elicit testimony on Wiggins’ other convictions, viz., his misdemeanors not involving moral turpitude, further stating that counsel had elicited testimony concerning Wiggins’ “hope” or “expectation” to *41 receive some consideration for leniency at Ms forthcoming sentencing.[1]
II.
Appellant contends that the court erred in limiting Ms inquiry on cross-examination into the nature of Wiggins’ prior criminal convictions. Imtially, we note that the trial court did not limit inquiry into the nature of all of Wiggins’ prior convictions. Instead, the trial court limited appellant’s cross-examination only as it concerned misdemeanors not involving moral turpitude. Although there was some imtial confusion on the issue of appellant’s inquiry into the nature of Wiggins’ prior convictions for felomes and misdemeanors involving moral turpitude, the trial court made clear that it would allow appellant to make such inquiry. Appellant’s counsel clearly understood the court’s clarification, stating that he would “prefer that middle ground rather than no ground.” The issue on appeal, therefore, is limited to the trial court’s refusal to allow appellant to cross-examine Wiggins concerning Ms prior convictions for misdemeanors not involving moral turpitude.
Where the purpose of the inquiry is to impeach a witness’ veracity, cross-examination concerning a witness’ pri- or convictions is limited to prior felony convictions and convictions for misdemeanors involving moral turpitude. See, e.g., Johnson v. Commonwealth, 224 Va. 525, 528, 298 S.E.2d 99, 101 (1982); Chrisman v. Commonwealth, 3 Va.App. 89, 93-100, 348 S.E.2d 399, 401-05 (1986). However, it is error to apply the principles governing cross-examination for purposes of impeaching a witness’ veracity to limit cross-examination designed to demonstrate a witness’ bias or motive to testify. Brown v. Commonwealth, 246 Va. 460, 463-64, 437 S.E.2d 563, 564-65 (1993) (“An accused has a right to cross-examine prosecution witnesses to show bias or motivation and that *42 right, when not abused, is absolute. The right emanates from the constitutional right to confront one’s accusers.”); Whittaker v. Commonwealth, 217 Va. 966, 967, 234 S.E.2d 79, 80 (1977); Fulcher v. Commonwealth, 226 Va. 96, 99, 306 S.E.2d 874, 876 (1983). We find this to be precisely the error the trial court committed in the present case.
It remains only to determine whether the trial court’s error in restricting appellant’s right to cross-examination was harmless beyond a reasonable doubt. Maynard v. Commonwealth, 11 Va.App. 437, 448, 399 S.E.2d 635, 641 (1990) (en banc); Williams v. Commonwealth, 4 Va.App. 53, 78, 354 S.E.2d 79, 93 (1987); Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986); see also Lavinder v. Commonwealth, 12 Va.App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc) (constitutional error harmless only when reviewing court able to declare belief that it was harmless beyond a reasonable doubt). “ ‘The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, [we] might nonetheless say that the error was harmless beyond a reasonable doubt.’” Maynard, 11 Va.App. at 448, 399 S.E.2d at 641 (quoting Van Arsdall, 475 U.S. at 684, 106 S.Ct. at 1438); see also Williams, 4 Va.App. at 78, 354 S.E.2d at 93; Shanklin v. Commonwealth, 222 Va. 862, 864-65, 284 S.E.2d 611, 612-13 (1981). Thus, to determine whether the trial error was harmless, our analysis turns not on the evidence excluded, viz., evidence of Wiggins’ prior convictions for misdemeanors not involving moral turpitude, but on the evidence in the record, viz., Wiggins’ testimony, which was not fully subject to cross-examination. See Van Arsdall, 475 U.S. at 684, 106 S.Ct. at 1438; Maynard, 11 Va.App. at 448, 399 S.E.2d at 641; Williams, 4 Va.App. at 78, 354 S.E.2d at 93; Shanklin, 222 Va. at 864-65, 284 S.E.2d at 612-13. As such, our harmless error analysis is akin to harmless error review in cases of improperly admitted evidence, where the error is held harmless if the record contains “overwhelming” evidence of guilt. See Clagett v. Commonwealth, 252 Va. 79, 91, 472 S.E.2d 263, 270 (1996), cert. denied, — U.S. -, 117 S.Ct. 972, 136 *43 L.Ed.2d 856 (1997); Jenkins v. Commonwealth, 244 Va. 445, 454, 423 S.E.2d 360, 366 (1992), cert. denied, 507 U.S. 1036, 113 S.Ct. 1862,123 L.Ed.2d 483 (1993). In this case, Wiggins’ testimony is the “improper” evidence we evaluate, to determine its effect, if any, on the verdict.
Our analysis of the effect of Wiggins’ testimony is guided by specific factors. In determining whether the trial court’s error in limiting appellant’s right to cross-examine Wiggins was harmless, we evaluate:
“the importance of [Wiggins’] testimony in the prosecution’s case, whether [Wiggins’] testimony was cumulative, the presence or absence of evidence corroborating or contradicting [Wiggins’] testimony on material points, the extent of cross-examination [of Wiggins] otherwise permitted and, of course, the overall strength of the prosecution’s case.”
Williams, 4 Va.App. at 78-79, 354 S.E.2d at 93 (quoting Van Arsdall, 475 U.S. at 684, 106 S.Ct. at 1438); Maynard, 11 Va.App. at 448, 399 S.E.2d at 641-42.
Based on our review of the record, we conclude beyond a reasonable doubt that the trial court’s error was harmless. The overall strength of the Commonwealth’s case against appellant is manifest. The facts established by testimony of witnesses other than Wiggins, standing alone, provided overwhelming evidence of appellant’s guilt. That evidence established that appellant participated, with malice, in the deadly attack on Ford. Appellant struck Ford repeatedly and held Ford down as Taylor struck him with various objects and eventually strangled him with a belt. In the face of Taylor’s stated intention to kill Ford, appellant continued his participation in the attack. Appellant later told his sister, “we just killed a dude.” The evidence further established that appellant and Taylor sought to take Ford’s money, by force, throughout the attack. After depositing Ford’s body, appellant returned with blood-stained money, the same money, it could reasonably be inferred, that Ford had placed in his mouth.
*44 Furthermore, Wiggins’ testimony was relatively insignificant to the Commonwealth’s case. Compare Shanklin, 222 Va. at 865, 284 S.E.2d at 613 (evidence sufficient to support conviction in absence of witness’ testimony), and Fulcher, 226 Va. at 99-100, 306 S.E.2d at 876-77 (same), with Brown, 246 Va. at 465, 437 S.E.2d at 565 (witness’ testimony only evidence identifying or impheating defendant as perpetrator), and Whittaker, 217 Va. at 967, 234 S.E.2d at 80 (same). Wiggins’ testimony was corroborating evidence of appellant’s participation in the attack on Ford and the motivation behind the attack. It did not materially contradict the testimony of the Commonwealth’s other witnesses, which alone provided evidence sufficient to support appellant’s convictions.[2]
Finally, notwithstanding the trial court’s exclusion of misdemeanor offenses not involving moral turpitude as evidence related to Wiggins’ bias, it is clear that appellant was afforded the opportunity to cross-examine Wiggins extensively on that very point. The court allowed appellant to elicit testimony concerning Wiggins’ prior convictions for felonies and misdemeanors involving moral turpitude. The jury was aware of at least ten of Wiggins’ prior convictions, seven of which it knew were for felonies. The jury knew of Wiggins’ forthcoming sentencing and knew Wiggins believed that his prior criminal record would likely be relevant to the sentence he received. The jury was further aware that, in exchange for his testimony, Wiggins hoped, “they [would not give him] the 15 years the charges carry.” In short, the issue of Wiggins’ bias and motive to lie was clearly before the jury; the jury knew that Wiggins hoped to avoid a long sentence in his three pending cases and that Wiggins knew the number of his prior convictions, both misdemeanor and felony, could bear on the length *45 of the sentence. Wiggins’ bias could have been further underscored and developed only by disclosure of additional criminal conduct that was manifestly of a less serious nature than the conduct of which the jury was aware.
In sum, based on our review of the overwhelming evidence of appellant’s participation in the crimes, the cumulative nature of Wiggins’ testimony, and the significant opportunity appellant was provided to present evidence concerning Wiggins’ bias or motive to testify, we conclude beyond a reasonable doubt that any error in refusing to allow cross-examination with respect to Wiggins’ prior convictions for misdemeanors not involving moral turpitude was harmless.
Accordingly, appellant’s convictions are affirmed.

Affirmed.

. Appellant proffered Wiggins' criminal record to the trial court. While Wiggins’ criminal record appears nowhere in the record on appeal, it is manifest from our reading of the record that Wiggins had been convicted of misdemeanors not involving moral turpitude.

. Although only Wiggins’ testimony placed an ashtray in appellant's hand, it is immaterial to appellant’s conviction for second degree murder whether, acting as a principal in the first degree, appellant struck Ford with an ashtray or whether, acting as a principal in the second degree, he held Ford down while Taylor struck him and eventually strangled him. Furthermore, contrary to the dissent’s suggestion, the extent to which Wiggins' testimony established premeditation is immaterial to appellant’s conviction for second degree murder.