COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Elder and Frank
Argued at Chesapeake, Virginia


TERRY TYRONE MOORE

                                       MEMORANDUM OPINION[*] BY
v.      Record No. 0981-03-1           JUDGE LARRY G. ELDER
                                           JULY 13, 2004
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
William C. Andrews, III, Judge

S. H. Weaver, Sr. (Weaver Law Offices, on brief), for appellant.

Kathleen B. Martin, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


Terry Tyrone Moore (appellant) appeals from his jury trial convictions for attempted

maiming, attempted robbery, conspiracy and two counts of use of a firearm. On appeal, he

contends the trial court erroneously prevented him from cross-examining one of the victims

about potential bias stemming from his entering a federal plea agreement that resulted in the

dismissal of numerous federal charges in exchange for his testifying against appellant. We hold

this limitation on cross-examination was error. Nevertheless, we affirm appellant's conviction

because we hold the exclusion of the evidence was harmless.

Where a defendant seeks to cross-examine a witness

> to impeach [the] witness' veracity, cross-examination . . . is limited
> to prior felony convictions and convictions for misdemeanors
> involving moral turpitude. However, it is error to apply the
> principles governing cross-examination for purposes of
> impeaching a witness' veracity to limit cross-examination designed
> to demonstrate a witness' bias or motive to testify.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Scott v. Commonwealth, 25 Va. App. 36, 41, 486 S.E.2d 120, 122 (1997) (citations omitted).

"An accused has a right to cross-examine prosecution witnesses to show bias or motivation and that right, when not abused, is absolute. The right emanates from the constitutional right to confront one's accusers." Brown v. Commonwealth, 246 Va. 460, 463-64, 437 S.E.2d 563, 564-65 (1993).

The fact that a witness "received lenient sentences in exchange for his testimony" against a defendant is "'*highly relevant*'"; it "lay[s] the predicate for an inference that the testimony . . . was biased and unreliable because induced by considerations of self-interest.'" Shanklin v. Commonwealth, 222 Va. 862, 864, 284 S.E.2d 611, 612 (1981) (quoting Whittaker v. Commonwealth, 217 Va. 966, 967, 234 S.E.2d 79, 81 (1977) (emphasis added in Shanklin)). Evidence relating to a point, such as bias, properly at issue in the case is relevant and, therefore, admissible "if it has *any logical tendency, however slight*, to establish a fact at issue in the case." Ragland v. Commonwealth, 16 Va. App. 913, 918, 434 S.E.2d 675, 678 (1993) (emphasis added); see also Charles E. Friend, The Law of Evidence in Virginia § 11-1 (5th ed. 1999 & Supp. 2001).

Appellant's case is not technically one in which a witness received a lenient sentence in exchange for his testimony against appellant. Witness Martin Jennings's situation involved a plea to one crime in exchange for the federal government's agreement not to prosecute other charged crimes. Further, Jennings entered into this agreement with the federal government several years before being asked to testify against appellant in an unrelated prosecution brought not by the federal government but by the state.

Nevertheless, Jennings had two potential motives under the plea agreement for testifying falsely against appellant. First, the federal plea agreement required Jennings "to testify truthfully and completely at grand juries, trials or other proceedings" and was not limited merely to federal

proceedings.  Jennings had already received a significant sentence reduction, from eighteen years to seven years, for cooperating with the federal prosecutor pursuant to the agreement in an unrelated case involving conspiracy to distribute "17 point something keys of crack" cocaine. When a representative of the federal government came to talk to Jennings in August 2001 about his 1996 altercation with appellant, Jennings could reasonably have assumed he would be eligible for an additional sentence reduction if he gave testimony that incriminated appellant, without regard for whether that testimony was true.

Second, Jennings could have feared that if he did not give testimony incriminating appellant at the request of the federal government, whether or not that testimony was true, the federal government would seek to void the plea agreement and to prosecute him for whatever charges had been dismissed pursuant to the agreement when Jennings pleaded guilty to the charge of conspiracy to distribute.  Jennings testified, in fact, that when "the federal government, [Detective Thurman] Clark or whoever," came to see him in August of 2001, Jennings had already received one sentence reduction.  Jennings testified he thought that sentence reduction was "the end of it" and that "[Detective] Clark or whoever . . . was just trying to use me."  Thus, we hold that the nature of the charges for which Jennings thought the federal government might still attempt to prosecute him was relevant to show bias against appellant including a motive to fabricate.

Based on these principles, we hold the trial court erred in refusing to allow appellant to question Jennings about the nature of the federal charges dismissed in exchange for his guilty plea on the conspiracy charge.

Although the court erred in restricting appellant's ability to cross-examine Jennings regarding possible bias, that error does not require reversal if we determine the error was harmless.  See Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991)

(*en banc*). "'The constitutionally improper denial of a defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is subject to . . . harmless-error analysis.'" Maynard v. Commonwealth, 11 Va. App. 437, 448, 399 S.E.2d 635, 641 (1990) (*en banc*) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S. Ct. 1431, 1438, 89 L. Ed. 2d 674 (1986)). "'The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, [we] might nonetheless say that the error was harmless beyond a reasonable doubt.'" Id. (quoting Van Arsdall, 475 U.S. at 684, 106 S. Ct. at 1438); see also Shanklin, 222 Va. at 864-65, 284 S.E.2d at 612-13; Scott, 25 Va. App. at 41-45, 486 S.E.2d at 122-24; Williams v. Commonwealth, 4 Va. App. 53, 78, 354 S.E.2d 79, 93 (1987). "Thus, to determine whether the trial error was harmless, our analysis turns not on the evidence excluded . . . but on the evidence in the record, *viz.*, [the witness'] testimony, which was not fully subject to cross-examination." Scott, 25 Va. App. at 42, 486 S.E.2d at 123. Other important factors are "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted and, of course, the overall strength of the prosecution's case." Van Arsdall, 475 U.S. at 684, 106 S. Ct. at 1438.

The facts of appellant's case relevant to the harmless error analysis are similar to those in Williams, 4 Va. App. 53, 354 S.E.2d 79. In Williams, we held the court did not abuse its discretion in limiting cross-examination but that, even if it had committed error, that error was harmless. Although the testimony of Frazier, the witness as to whom cross-examination was limited in Williams, "was not unimportant," "the Commonwealth's overall case was strong." "[T]here was a good deal of evidence which tended to corroborate [Frazier's testimony]"--including the defendant's statements to a detective and the drugs found on his

- 4 -

person--"and no evidence to refute [Frazier's testimony]." Williams, 4 Va. App. at 79, 354 S.E.2d at 94. Further, the only evidence attacking Frazier's credibility came from his sister, who had been dating the defendant. Id. Finally,

> Williams was not deprived of all right to cross-examine Frazier. Defense counsel cross-examined [him] during the trial and confirmed the fact that drug charges against him were still pending. Even without the further cross-examination sought, counsel was able to argue to the jury that [the witness] should not be believed because he was attempting to "save his own skin" and that he was "motivated to put the blame on someone else." Counsel also invited the jury to "wonder how the Commonwealth got [the witness] to come to court and testify [since] [h]is case hasn't come up yet." It is evident from these facts that Williams was not deprived of the opportunity to argue that [the witness] had a motive to provide favorable testimony for the Commonwealth.

Id.

In appellant's case, like in Williams, "the Commonwealth's overall case was strong. [The witness'] testimony was not unimportant; however, there was a good deal of evidence which tended to corroborate it and no evidence to refute it." Id. Michael Weatherford, Jennings's companion at the time of the shooting, corroborated Jennings's testimony that the shooting occurred and that appellant was the shooter. Keith Davis, appellant's companion at the time of the shooting, testified that he and appellant planned to rob Jennings, who they knew was a drug dealer, and that they had gone to Jennings's apartment to commit the robbery. Davis also testified that appellant shot at Jennings first and that Jennings merely returned appellant's fire.

Further, in appellant's case, the evidence of harmlessness was even stronger than in Williams. In Williams, the jury was not made aware that the witness had a plea agreement with the Commonwealth. Id. at 79-80, 354 S.E.2d at 94. In appellant's case, by contrast, the jury was informed of the existence of the plea agreement, just not the precise nature of the charges that were dismissed in exchange for the agreement. Appellant's counsel cross-examined Jennings about other crimes of violence which he had been involved in but not charged for, and he

obtained Jennings's admission that he had been a drug dealer who had originally lied to police about his own level of involvement in the shooting and drug dealing before he was indicted and chose to cooperate with the authorities. Finally, counsel was able to argue to the jury as follows:

> The prosecution would lead you to believe that these [witnesses, including Jennings,] had nothing to gain, the ones that came in here. A young fellow, not so young now, gets 216 months. Through telling the government something, he's gotten that reduced to 84. In the agreement, . . . it says that he's not going to be prosecuted for any crimes of violence.
> Incidentally, when I asked Mr. Jennings about whether or not he thought shooting at somebody was a crime of violence, he says, "It's not a crime of violence unless you hit them." And he told you that he had been shooting at people before. That happens on the street.
> The prosecution says they are concerned about the street violence. If they were so concerned about the street violence, here's a man, Mr. Jennings, . . . who told them, "I do a lot of that stuff," what do they do for him? They say, "All right. We're not going to prosecute you for any of that stuff you did. You just come down and do a little testifying. We're going to let you go."

See Shanklin, 222 Va. at 864-65, 284 S.E.2d at 612-13 (holding even absent testimony of witness allegedly biased due to existence of plea bargain for undisclosed sentence, "there was sufficient evidence to support a conviction" because testimony of challenged witness also contained components favorable to defendant and, despite non-disclosure of sentence, "defendant's counsel ably and fully argued to the jury [the witness'] bias"); cf. Scott, 25 Va. App. at 43-45, 486 S.E.2d at 123-24 (holding any error in restricting cross-examination was harmless beyond reasonable doubt because "facts established by testimony of [Commonwealth's other] witnesses . . . , standing alone, provided overwhelming evidence of [Scott's] guilt," testimony at issue "was relatively insignificant to the Commonwealth's case," and "notwithstanding the trial court's exclusion of misdemeanor offenses not involving moral turpitude as evidence related to [witness'] bias, . . . [Scott] was afforded the opportunity to

cross-examine [the witness] extensively" about motive to lie "to avoid a long sentence in . . . three pending cases").

For these reasons, we hold the trial court's limitation on appellant's cross-examination was error. Nevertheless, we affirm appellant's conviction because we hold the exclusion of the evidence was harmless.

<u>Affirmed.</u>