COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present:   Judges Chaney, Callins and Senior Judge Humphreys
Argued at Leesburg, Virginia


JOSE VIDAL PEREIRA

                                                           OPINION BY
v.        Record No. 0415-23-4                   JUDGE VERNIDA R. CHANEY
                                                           JANUARY 28, 2025
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY[1]
James E. Plowman, Jr., Judge

Ryan Campbell (Eric M. Shamis; King Campbell Poretz & Mitchell,
PLLC, on briefs), for appellant.

Robert D. Bauer, Assistant Attorney General (Jason S. Miyares,
Attorney General; Collin Chayce Crookenden, Assistant Attorney
General, on brief), for appellee.


A jury convicted Jose Vidal Pereira of first-degree murder, armed burglary, and conspiracy

to commit burglary after a joint trial with co-defendant Darren Davis.  On appeal, Pereira argues

that the trial court erred by (1) denying his request for an in camera review of two recorded jail calls

between another co-defendant, Martin Martinez, and Martinez's lawyer, (2) striking a juror for

cause, and (3) finding the evidence sufficient for his conviction for armed burglary.[2]  We agree that

the trial court erred in denying the in camera review of the jail calls.  However, we find the error

---

[1] Pereira's charges originated in the Circuit Court of Fauquier County but were removed
to the Circuit Court of Loudoun County on a granted motion to transfer venue.

[2] Pereira also argues that the trial court erred by joining his trial with those of his
co-defendants Davis, Martinez, and Jury Guerra.  Pereira argued that the joinder violated his
Fifth Amendment right against self-incrimination because Davis's failure to present alibi
evidence prejudiced Pereira's defense.  Because Pereira did not make this specific argument to
the trial court at the time of his objection to the joinder, however, we find that the argument is
waived under Rule 5A:18.  "[An appellant's] failure to raise the arguments before the trial court
precludes him from raising them for the first time on appeal."  *See Buck v. Commonwealth*, 247
Va. 449, 452-53 (1994); *see also* Rule 5:25.

was harmless because the contents of those calls constitute impeachment evidence cumulative with what Pereira elicited during Martinez's cross-examination. Additionally, finding no error in striking a juror for cause and that the evidence was sufficient for armed burglary, this Court affirms Pereira's convictions.

BACKGROUND[3]

I. The Armed Burglary

On April 22, 2021, Pereira, Darren Davis, Jury Guerra, and Martin Martinez broke into Charles Bopp's home, mistaking it for the home of a neighbor they intended to burglarize. They planned to steal a safe containing cash. Earlier, while preparing for the burglary, Martinez searched for a gun but could not locate one. They traveled to the house in Pereira's SUV. Surveillance footage taken around 4:50 p.m. on April 22 and a store receipt showed that Pereira stopped at a 7-Eleven near the home to purchase masks and gloves. A camera on the property showed the SUV arriving at Bopp's house around 5:07 p.m.

After arriving at the house, Martinez stayed in the SUV to keep watch while Pereira and Davis entered the house to search for the safe. Davis carried a firearm. Bopp was not in the residence at the time. Pereira kicked in the front door of the house, and Davis followed him into the residence. Shortly after the men's arrival, Martinez ran inside to warn Pereira, and Davis that Bopp had returned to the house. The three men exited the house through a window, and Davis confronted Bopp in the driveway. During the confrontation, Davis pulled out the gun and shot Bopp three times in the head and neck. Bopp died from his injuries.

---

[3] We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires that we "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

Following the shooting, the three men departed in the SUV but returned briefly to search for Martinez's smartphone, which he had left behind in Bopp's house. They were unable to locate the phone and quickly departed again. A trail camera showed the SUV leaving Bopp's residence at 5:18 p.m., returning at 5:25 p.m., and leaving again at 5:27 p.m.

During the investigation of the crime, police seized the defendants' cellphones and Pereira's GPS tracking device that he wore as a condition of pretrial supervision for an unrelated criminal charge. Data recovered from the devices showed that Pereira had traveled to Bopp's house around the time of the burglary. Police also discovered texts between Pereira and Davis, sent a few hours after the burglary, in which Pereira gave Davis instructions on how to wipe data from his smartphone. Police collected a DNA sample from Pereira and searched his SUV, where they found a dolly and masks with Pereira's DNA on them.

Davis, Pereira, Martinez, and Guerra were indicted on charges of first-degree murder, armed burglary, and conspiracy to commit burglary. Guerra pleaded guilty to all charges. Martinez pleaded guilty and agreed to cooperate with the Commonwealth, while Pereira and Davis entered pleas of "not guilty" and proceeded to trial.

## II. Pre-trial motion for in camera review

A few months before trial, the prosecutor and a detective met Martinez and his trial counsel at the Rappahannock Regional Jail (RRJ) where Martinez was incarcerated on related charges, to conduct an audio-recorded interview about the burglary. During the interview, Martinez implicated Pereira and identified Davis as the shooter.

Pereira served a subpoena duces tecum on RRJ for audio copies of all recorded phone calls that Martinez had made while incarcerated at the jail. The jail produced three discs of calls in response to the subpoena. Each call began with a recorded message warning the caller that the jail was recording and monitoring the call. Pereira's counsel reviewed the calls and discovered that the

day before his interview, Martinez placed two calls to his attorney, during which he discussed the burglary. Realizing those calls might contain privileged communications, Pereira's counsel stopped listening to them and contacted the Virginia State Bar. The Virginia State Bar advised Pereira's attorney that the calls were protected by attorney-client privilege. The Bar informed him that Rule 4.4 of the Rules of Professional Conduct prohibited listening to the calls without "a judicial ruling" authorizing it. Pereira then moved the trial court for an in camera review of the calls.

The Commonwealth did not oppose Pereira's motion, but Martinez's attorney objected to the in camera review on the grounds that the calls were privileged. At a hearing on the motion, Pereira argued that an in camera review would reveal evidence establishing Martinez waived attorney-client privilege by disregarding explicit warnings that the jail was recording and monitoring the conversations with his attorney. Specifically, Pereira proffered that at the beginning of each recorded jail call, an automated voice message warned Martinez that his conversations were "subject to monitoring and recording." Pereira argued that denying him access to the calls would impede his ability to effectively cross-examine a prosecution witness. The trial court denied Pereira's request for in camera review, reasoning that he had failed to demonstrate that Martinez had "explicit[ly] and knowing[ly]" waived attorney-client privilege.

### III. Voir dire

During voir dire, the court asked prospective jurors whether they had "expressed or formed an opinion" regarding Davis's or Pereira's guilt or harbored "any bias or prejudice against" any party. None responded. However, later during the Commonwealth's questioning, Juror L.[4] disclosed that it would be "difficult for [him] to render a fair and impartial verdict in this case" because his friend had been prosecuted for a felony. Juror L. said he believed his friend had been "treated [un]fairly during the process, which became like a game." Juror L. also indicated that he

---

[4] For the sake of privacy, we use the juror's last name initial.

"didn't have a very high opinion" of his friend's defense attorney and responded "yes" when asked if his friend's experience "would make it difficult for [him] to render a fair and impartial verdict in this case[.]"

Pereira's attorney then asked Juror L. a series of follow-up questions inquiring as to whether his friend's "bad representation" would "cause any issues either against the defense or against the Commonwealth" and whether he would be able to "base [his] determinations as a juror solely on the evidence in this case." Juror L. responded simply "no" and "yes" to each question respectively. Following this exchange, the Commonwealth moved to strike Juror L. for cause, arguing that the juror was biased against the Commonwealth. Pereira objected, countering that Juror L. had expressed no such bias and that, regardless, he had rehabilitated him. The trial court found that although Juror L. ultimately agreed with Pereira's counsel that he could be impartial, "the firmness" and "certainty" of the juror's "initial statements" suggested he harbored bias against the Commonwealth. Accordingly, the trial court struck Juror L. for cause.

IV. Trial

At trial, Martinez recounted the events of the burglary. Pereira thoroughly cross-examined Martinez on his motives for testifying on behalf of the Commonwealth. Martinez admitted that he was still awaiting sentencing on his guilty plea and hoped for leniency in exchange for his testimony. Martinez admitted that he provided inconsistent accounts to police. For example, Martinez initially reported that Davis had attempted to steal Bopp's shotgun during the burglary, rather than Pereira, and that Martinez, not Pereira, had discarded Bopp's cell phone during their escape. In addition, he confirmed that he had pleaded guilty to all his charges arising from the burglary and was awaiting sentencing for those offenses.

At first, Martinez claimed that he had received no promises of leniency from the prosecution in exchange for his testimony and maintained that he was testifying against Pereira and Davis

because it was "the right thing to do." However, Martinez admitted to telling his friends that the Commonwealth had promised to "get rid of [his] murder charge," and he texted his girlfriend, "[m]y lawyer said I'm only going to get a burglary charge. So all my other charges get dropped if I testify." He told a co-defendant before trial that he planned to testify falsely because the Commonwealth refused to reduce his charges as expected. Martinez also acknowledged that, after agreeing to cooperate with the Commonwealth, he was removed from "solitary confinement" at RRJ and transferred to a less restrictive jail.

After the Commonwealth finished its case-in-chief, Pereira moved to strike the armed burglary charge against him, arguing that the evidence was only sufficient to prove that he committed the lesser-included offense of burglary. Pereira asserted that there was no evidence he had been armed at the time of the burglary, he was unaware that Davis had brought a gun, and no theory of accomplice liability applied. The trial court denied the motion, reasoning that Pereira could be found responsible for armed burglary on a common law "concert of action" theory.

Pereira testified to an alternative version of events in which Martinez and an unknown accomplice, "Big Homey," asked Pereira to accompany them to Bopp's house under the guise of selling drugs and going to the gym. He claimed that he was an unwitting participant in the burglary. Pereira testified that, upon arriving at Bopp's house, Martinez and Big Homey pointed guns at him and ordered him to stay in the SUV and serve as a "lookout" while they broke into the house. Pereira also testified that Martinez shot Bopp. After the close of evidence, Pereira renewed his motion to strike the armed burglary charge on the same grounds as previously argued. The trial court again denied the motion.

During closing arguments, the Commonwealth argued that Martinez's account of the burglary combined with the circumstantial evidence implicating Pereira's involvement proved Pereira's guilt. In response, Pereira reminded the jury that without Martinez's testimony, the

evidence established Pereira's mere presence during the offenses, which is insufficient to prove his guilt. In addition, Pereira argued that the jury should disbelieve Martinez's testimony due to his prior felony record, inconsistent accounts, and desire to ingratiate himself to the Commonwealth in hopes of receiving leniency at sentencing for his related convictions. The jury convicted Pereira on all the charges.

## ANALYSIS

On appeal, Pereira first argues that the trial court erred by denying his motion for in camera review of the jail calls between Martinez and his attorney. Pereira contends that the court's denial deprived him of his Sixth Amendment right to effectively cross-examine a prosecution witness. Second, Pereira argues that the trial court erred by striking Juror L. for cause, disagreeing with the court that the juror had expressed bias in his voir dire responses and arguing that, in any case, the juror had been rehabilitated. Third, Pereira argues that the trial court erred in denying his motion to strike the armed burglary charge and that there is insufficient evidence to support a conviction on this charge[5] because no single participant committed all elements of the offense.

We agree with Pereira that the trial court erred in denying in camera review of the jail calls. Even so, this Court holds that the denial was harmless because the impeachment evidence contained in the calls was drawn out on Pereira's cross-examination of Martinez. This Court further holds that the trial court did not err by striking Juror L. for cause and that the evidence is sufficient to sustain Pereira's conviction for armed burglary. This Court, therefore, affirms the trial court's judgment.

---

[5] Pereira does not challenge the sufficiency of the evidence supporting his convictions for first-degree murder and conspiracy to commit burglary.

I.  The trial court's denial of in camera review was harmless error.

A.  *Pereira was entitled to an in camera review.*

On appeal, this Court recognizes that "whether to undertake in camera review of disputed records and how to conduct such review are matters committed to the trial court's sound discretion, and we will not disturb the trial court's judgment in such matters absent an abuse of discretion." *Citizens for Fauquier Cnty. v. Town of Warrenton*, 81 Va. App. 363, 385 (2024).  "A trial court abuses its discretion by (1) failing to consider a significant relevant factor, (2) giving significant weight to an irrelevant or improper factor, (3) committing a clear error of judgment in assigning weight to all proper factors, or (4) making a mistake of law."  *Id.* (quoting *Cornelius v. Commonwealth*, 80 Va. App. 29, 41 n.13 (2024)).

Generally, a party asserting attorney-client privilege must show that "the attorney-client relationship existed, that the communications under consideration are privileged, and that the privilege was not waived."  *Castillo v. Commonwealth*, 70 Va. App. 394, 429 (2019) (quoting *Commonwealth v. Edwards*, 235 Va. 499, 509 (1988)).  The waiver, like the privilege, belongs only to the client.  *See* Rule 1.6(a) of the Virginia Rules of Professional Conduct ("A lawyer shall not reveal information protected by the attorney-client privilege . . . unless the client consents after consultation . . . .").  The privilege may be explicitly or implicitly waived.  *See City-to-City Auto Sales, LLC v. Harris*, 78 Va. App. 334, 345 (2023) ("Generally, 'a waiver' is 'a voluntary abandonment of some known legal right, advantage, or privilege, or such conduct as warrants an inference of the abandonment of such right, or the intentional doing of an act inconsistent with claiming it . . . .'" (quoting *Travis v. Finley*, 36 Va. App. 189, 200 (2001))).  Whether a client implicitly waived attorney-client privilege is assessed under an "objective" standard and has been held to occur "[w]hen a client communicates information to his attorney with the understanding that the information will be revealed to others."  *Edwards*, 235 Va. at 509.

The Supreme Court of the United States has held that when one party objects to another's access to potentially privileged information, in camera review of the disputed evidence may be appropriate to determine whether the privilege applies. *See United States v. Zolin*, 491 U.S. 554, 572 (1989) ("In fashioning a standard for determining when *in camera* review is appropriate, we begin with the observation that '*in camera* inspection . . . is a smaller intrusion upon the confidentiality of the attorney-client relationship than is public disclosure.'" (quoting David J. Fried, *Too High a Price for Truth: The Exception to the Attorney-Client Privilege for Contemplated Crimes & Frauds*, 64 N.C. L. Rev. 443, 467 (1986))). The Supreme Court of Virginia has said similarly. *See, e.g.*, *Bergano v. City of Virginia Beach*, 296 Va. 403, 410 (2018) ("[W]e note as a threshold matter that a court's *in camera* review of the records constitutes a proper method to balance the need to preserve confidentiality of privileged materials with the statutory duty of disclosure under VFOIA."). The party asserting the privilege must first make a "prima facie" showing that the materials in question are privileged, and that the privilege has not been waived, before the burden shifts to the party requesting the review to present a "factual basis sufficient to support a reasonable, good faith belief that an *in camera* inspection may reveal evidence that information in the materials is not privileged." *N.L.R.B. v. Interbake Foods, LLC*, 637 F.3d 492, 502 (4th Cir. 2011) (quoting *In re Grand Jury Investigation*, 974 F.2d 1068, 1074 (9th Cir. 1992)).[6]

Here, the trial court erroneously required Pereira to show that the jail calls were not protected by attorney-client privilege instead of first requiring Martinez's attorney to make a prima facie showing that the calls were privileged. The trial court also erred by requiring Pereira to show

---

[6] While not binding, this Court finds the reasoning in the federal cases *Interbake Foods*, 637 F.3d 492, *In re Grand Jury Proceedings*, 727 F.2d 1352 (4th Cir. 1984), and *United States v. Lentz*, 419 F. Supp. 2d 820 (E.D. Va. 2005), persuasive. *See McKeithen v. City of Richmond*, 302 Va. 422, 440 n.7 (2023) ("We thus view the federal precedents as persuasive, but not binding, authority."); *see also Citizens for Fauquier Cnty.*, 81 Va. App. at 374 n.1 (noting that this Court use federal FOIA cases as "persuasive precedent" in discussing Virginia's FOIA statute).

that Martinez had explicitly and knowingly waived attorney-client privilege. On the contrary, the holder of attorney-client privilege may implicitly waive the privilege by failing to keep communications confidential. *In re Grand Jury Proceedings*, 727 F.2d 1352, 1356 (4th Cir. 1984). For instance, the privilege may be waived in phone calls made from a detention facility where a recording warns the caller that their calls are being monitored and recorded. *See United States v. Lentz*, 419 F. Supp. 2d 820, 827-28 (E.D. Va. 2005) ("[A]n inmate's telephone conversations with counsel are not protected by the attorney-client privilege where, as here, the inmate is notified at the outset that the calls are recorded and subject to monitoring.").

Moreover, even if Martinez's attorney had made the requisite prima facie showing, Pereira's uncontested proffers amply supported a "good faith belief that *in camera* inspection *m[ight] reveal* evidence" that Martinez had, in fact, waived the privilege. *Interbake Foods*, 637 F.3d at 502 (emphasis added) (quoting *In re Grand Jury Investigation*, 974 F.2d at 1074). Indeed, Pereira proffered evidence that Martinez had knowingly "communicate[d] information to his attorney with the understanding that the information w[ould] be revealed to others" by ignoring warnings that his conversations were being monitored and recorded. *Edwards*, 235 Va. at 509. Although the record does not reflect an explicit waiver of Martinez's attorney-client privilege, under the particular circumstances of this case, an in camera review was required to determine if he had *implicitly* waived the protection of the privilege. The trial court erred by denying the request for in camera review by erroneously requiring Pereira to make an initial showing that Martinez "explicit[ly] and knowing[ly]" waived attorney-client privilege to the calls, and where Pereira showed a good-faith belief that the calls were not privileged.

B.  *The trial court's error was harmless because Pereira elicited impeachment evidence during Martinez's cross-examination.*

Pereira contends that the trial court's improper denial of his request for in camera review undermined his right to effectively cross-examine Martinez at trial.  This Court disagrees and holds that the trial court's denial of the in camera inspection was harmless.

The improper restriction of a criminal defendant's right to cross-examination is subject to constitutional harmless error review.  *Cousins v. Commonwealth*, 56 Va. App. 257, 276 (2010) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)).  Our harmless error analysis "turns not on the evidence excluded . . . but on the evidence in the record, [namely] [the witness'] testimony, which was not fully subject to cross-examination."  *Id.* (first and third alterations in original) (quoting *Scott v. Commonwealth*, 25 Va. App. 36, 42 (1997)).  "The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, [we] might nonetheless say that the error was harmless beyond a reasonable doubt."  *Id.* (alteration in original) (quoting *Maynard v. Commonwealth*, 11 Va. App. 437, 448 (1990) (en banc)).  Important factors in the harmless error analysis in this context include "the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted," and "the overall strength of the prosecution's case."  *Id.* (quoting *Van Arsdall*, 475 U.S. at 684).

The Supreme Court of Virginia has held that the improper restriction of a defendant's right to cross-examine an accomplice regarding his motive to fabricate his testimony due to his cooperation with the prosecution was harmless where defense counsel questioned him on other matters that "tend[ed] to show any pressures acting upon [the accomplice] at the time he testified."  *Hewitt v. Commonwealth*, 226 Va. 621, 623 (1984).  Similarly, when other evidence "specifically linked [the defendant] to the crime" and his counsel "fully argued" his accomplice's

bias to the jury, any error in limiting his right to cross-examine the accomplice was harmless. *Shanklin v. Commonwealth*, 222 Va. 862, 865 (1981).

Martinez's jail calls to his lawyer contained cumulative impeachment evidence, the absence of which did not prejudice Pereira. *Cf. Hash v. Dir. of the Dep't of Corr.*, 278 Va. 664, 679 (2009) (finding in the ineffective assistance of counsel context that the "evidence presented at trial was such that any potential further impeachment of Carter by use of his letters would not have yielded a reasonable probability of a different result at trial" (citing, *e.g.*, *Lester v. Ayers*, 267 Fed. Appx. 725, 727 (9th Cir. 2008) (given the degree of successful impeachment, additional impeachment urged by defendant would not have changed the result of the proceedings))); *Pace v. Richmond*, 231 Va. 216, 227 (1986) ("Although evidence may be relevant, its exclusion does not constitute reversible error if it is merely cumulative."); *Lockhart v. Commonwealth*, 34 Va. App. 329, 346 (2001) (finding in the *Brady v. Maryland*, 373 U.S. 83 (1963), context that "when the suppressed impeachment evidence in M.B.'s pretrial statements and the accompanying notes is considered with all the other impeachment evidence adduced at trial, the additional evidence becomes nothing more than cumulative impeachment evidence and, hence, immaterial in this setting").

The jail calls went to Martinez's motivation to fabricate his testimony—the exact issue on which Pereira thoroughly cross-examined Martinez at trial. For example, Martinez told his attorney that he planned to tell the prosecutor who shot Bopp and that Martinez was not "directly" involved in the shooting. His attorney replied, "That's going to help you" because "[i]f you weren't there and you didn't pull the trigger then you didn't kill anybody." Martinez's attorney also told him he would receive "more [jail] time" if he chose not to cooperate, although she explained the prosecutor could not explicitly offer a plea bargain because opposing counsel would "rip you apart on the stand if it looks like you were promised anything."

Contrary to Pereira's assertions, his cross-examination of Martinez was not impeded by the trial court's failure to permit an in camera review of the jail calls. At trial, Pereira thoroughly questioned Martinez regarding his motives for testifying on behalf of the Commonwealth. During the cross-examination, Martinez admitted that he was awaiting sentencing on his related convictions and hoped for leniency in exchange for his testimony. Martinez also admitted he had been transferred to a less restrictive jail after agreeing to testify, and he had told a co-defendant that he would testify falsely because the Commonwealth refused to reduce his charges as expected. Moreover, Pereira emphasized those points during his closing argument and urged the jury to reject Martinez's account because he had a motive to fabricate his testimony.

This Court has found a trial court's evidentiary error to be harmless where the jury nevertheless had a substantial opportunity to consider the evidentiary matter in question. *See, e.g.*, *Cappe v. Commonwealth*, 79 Va. App. 387, 411 (2024) ("[The potential witness] should have been permitted to testify based on her lengthy knowledge of the defendant's appearance, but the absence of her testimony did not substantially influence the outcome of the trial."); *Davis v. Commonwealth*, 79 Va. App. 123, 146-47 (2023) (finding that improperly admitted cumulative evidence of the defendant's felony conviction "could not have influenced the jury or substantially affected the verdict" because the defendant's own admission established his felony conviction).

Here, Pereira's counsel elicited substantial impeachment evidence on cross-examination and presented it to the jury for consideration. Martinez's admissions on the stand made it clear that he expected leniency in exchange for his testimony even though he had not been offered an explicit plea bargain and thoroughly explored other subjects that "tend[ed] to show any pressures acting upon" him during his testimony. *Hewitt*, 226 Va. at 623. Pereira was able to rely on these admissions to argue Martinez's bias to the jury.

Further, the evidence, when viewed as a whole, strongly corroborates Martinez's testimony regarding Pereira's involvement in the burglary. Specifically, surveillance video shows Pereira's SUV arriving at and leaving Bopp's residence multiple times and Pereira stopping at a 7-Eleven near the residence. A receipt confirms Pereira's purchase of masks and gloves from 7-Eleven. Police later discovered the masks in Pereira's car with Pereira's DNA on them along with a dolly. Cell data from Pereira's smartphone and a GPS tracking device established that he had traveled to Bopp's house at the time of the burglary. Finally, incriminating texts exchanged between Pereira and Davis hours after the burglary showed that Pereira was involved in the offense.

Pereira "fully argued" the issue of Martinez's bias to the jury, and other evidence in the record specifically linked Pereira to the crime. *See Shanklin*, 222 Va. at 865 (deeming an evidentiary error harmless where "defendant's counsel ably and fully argued to the jury [a witness's] bias"). Accordingly, this Court finds that the trial court's error in denying Pereira's request for in camera review of the jail calls was harmless.

## II. The trial court did not abuse its discretion striking Juror L. for cause.

Pereira contends that the trial court erred in striking Juror L. for cause, arguing that the juror did not express bias during voir dire and, regardless, he was rehabilitated.

"Exclusion may be required if a juror has 'formed any opinion[] or is sensible of any bias or prejudice'" against the parties. *Harvey v. Commonwealth*, 76 Va. App. 436, 454 (2023) (alteration in original) (quoting *Keepers v. Commonwealth*, 72 Va. App. 17, 42 (2020)). The question is whether the potential juror "can lay aside the[ir] preconceived views and render a verdict based solely on the law and evidence presented at trial." *Taylor v. Commonwealth*, 61 Va. App. 13, 23 (2012) (quoting *Lovos-Rivas v. Commonwealth*, 58 Va. App. 55, 61 (2011)). In determining whether a juror harbors a fixed bias against a party, it is within the trial court's

- 14 -

purview "to determine what significance to give the juror's statements," in light of his "inflections, tone, . . . tenor of dialogue," and "[the juror's] general demeanor." *Harvey*, 76 Va. App. at 455-56 (first quoting *Castillo v. Commonwealth*, 70 Va. App. 394, 423 (2019); and then quoting *Smith v. Commonwealth¸* 219 Va. 455, 464-65 (1978)). Since the trial court had the opportunity to directly observe the juror's words and demeanor, its determination as to bias is to be given "great deference on appeal" unless "plainly wrong or unsupported by the record." *Id.* (quoting *Huguely v. Commonwealth*, 63 Va. App. 92, 121, 127 (2014)).

Pereira argues that the trial court incorrectly found that Juror L. harbored a fixed bias against the Commonwealth. Pereira contends that Juror L.'s voir dire statements indicated that his anger over his friend's prosecution was directed only at the friend's defense attorney, not the prosecution or the judicial system. However, the record supports the trial court's finding to the contrary. On the Commonwealth's initial questioning, Juror L. made several statements indicating a bias against the Commonwealth. The trial court observed Juror L.'s demeanor and found that the "firmness" of the juror's initial statements indicated a *fixed* bias.

In addition, it was reasonable for the trial court to conclude that Juror L.'s bias persisted despite Pereira's efforts to rehabilitate him through suggestive questions. Absent proper rehabilitation, a juror holding a fixed bias against a party must be disqualified. *Scott v. Commonwealth*, 58 Va. App. 265, 271 (2011). "Rehabilitation of a juror who has demonstrated bias requires *more than just an assertion by the juror that he can be impartial*." *Id.* at 272 (emphasis added). "Proper rehabilitation" requires first "instructing the potential juror on the correct principle of the law"; then, "[o]nce the potential juror acknowledges that he can apply this principle of law, the juror must then be allowed to reconcile it with his previous views." *Id.* (citing *Bradbury v. Commonwealth*, 40 Va. App. 176, 183 (2003)). "In this fashion, the juror could be rehabilitated using [his] own words to clarify [his] views *rather than responding to the*

- 15 -

*suggestions and influence of others.*" *Id.* (emphasis added) (quoting *Bradbury*, 40 Va. App. at 183). After Juror L. disclosed his bias, Pereira did not instruct him that the law required deciding the case based solely on the evidence. Instead, Pereira asked a series of questions suggesting a desired response. Juror L.'s mere assent to defense counsel's persuasive suggestions that he could be impartial is insufficient to show that the juror could "lay aside [his] preconceived views and render a verdict based solely on the law and evidence presented at trial." *Ramos v. Commonwealth*, 71 Va. App. 150, 157 (2019) (quoting *Griffin v. Commonwealth*, 19 Va. App. 619, 621 (1995)). Accordingly, the trial court did not abuse its discretion in striking Juror L. for cause.

III. The evidence was sufficient to sustain the armed burglary conviction.

Pereira argues that the trial court erred in denying his motion to strike the armed burglary charge and that the evidence is insufficient to support his conviction for armed burglary. This Court holds that the evidence is sufficient to sustain a conviction on this charge.

When reviewing a denial of a motion to strike, "[w]hat the elements of the offense are is a question of law that [this Court] reviews de novo." *Diaz v. Commonwealth*, 80 Va. App. 286, 313 (2024) (quoting *Linnon v. Commonwealth*, 287 Va. 92, 98 (2014)). However, "[w]hether the evidence adduced is sufficient to prove each of those elements is a factual finding, which will not be set aside on appeal unless it is plainly wrong." *Linnon*, 287 Va. at 98. "When presented with a sufficiency challenge on appeal, [appellate courts] review the evidence in 'the light most favorable' to the Commonwealth." *Bowman v. Commonwealth*, 290 Va. 492, 494 (2015) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). "Doing so requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'"

*Joyce v. Commonwealth*, 82 Va. App. 519, 523 (2024) (quoting *Commonwealth v. Cady*, 295 Va. 325, 329 (2021)).

Pereira contends that no co-conspirator was a first-degree principal to the crime of armed burglary[7] in this instance because no single participant committed all elements of the offense. However, the caselaw establishes that a principal in the first degree may exist even where no one individual physically committed all elements of a crime. "[W]here part of a crime is committed in one place [by one defendant] and another part is committed in a different place [by another defendant], the author of each part is a principal in the first degree." *Muhammad v. Commonwealth*, 269 Va. 451, 482 (2005) (quoting 1 Wharton's Criminal Law § 30 (15th ed. 1993)). The record supports the jury's finding that Pereira, with his co-defendants, planned to and in fact did burglarize Bopp's house. The record also demonstrates that Davis showed Pereira his firearm before the burglary. On these facts, a reasonable juror could find that Davis and Pereira "co-authored" the crime of armed burglary.

The evidence is also sufficient to show that Pereira was guilty of "armed burglary" under a "concert of action" theory because the record supports finding that he knew Davis was armed when the co-defendants entered the house. Under a "concert of action" theory, the Commonwealth need not prove an accomplice shared the perpetrator's criminal intent. Instead, that theory provides that when conspirators execute a plan to commit a specific offense and one of the conspirators commits another crime in the process, all conspirators are criminally liable for that crime—even if unintended—provided it was an "incidental probable consequence" of their plan's execution. *Thomas v. Commonwealth*, 279 Va. 131, 157 (2010) (quoting *Brown v. Commonwealth*, 130 Va. 733, 738 (1921)); *Brown*, 130 Va. at 738 ("All those who assemble themselves together with an

---

[7] Code § 18.2-89 states that a person is guilty of armed burglary if he "break[s] and enter[s] the dwelling house of another . . . with intent to commit a felony or any larceny therein" and is "armed with a deadly weapon at the time of entry."

- 17 -

intent to commit a wrongful act, the execution whereof makes probable, in the nature of things, a crime not specifically designed, but incidental to that which was the object of the confederacy, are responsible for such incidental crime."). For instance, our Supreme Court has held that a defendant who participated in a robbery was guilty of use of a firearm in the commission of robbery under a concert of action theory even though the Commonwealth "fail[ed] to prove he had advance knowledge of his co-actor's possession of a firearm." *Carter v. Commonwealth*, 232 Va. 122, 126 (1986). Noting that the defendant and his co-actors "shared the common intent to commit all of the elements of robbery, including the use of such force, violence, or intimidation," the Court held that "[a]n incidental probable consequence of such a shared intent was the use of a weapon." *Id.*

The evidence, viewed in the light most favorable to the Commonwealth, supports a finding that Pereira knew that a co-conspirator was in possession of a gun at the time of the breaking and entering. Specifically, Pereira testified that he had seen Martinez and his accomplice pull out a gun before entering Bopp's house. Since this testimony does not necessarily "conflict with that of the Commonwealth" or with the jury's finding of guilt,[8] this Court may "regard as true all the credible evidence favorable to the Commonwealth." *Kelley v. Commonwealth*, 289 Va. 463, 467-68 (2015). Even if we were to reject this testimony, however, a reasonable fact finder could find that the presence of the gun was "an incidental probable consequence" of the planned offense. Here, Pereira and his co-conspirators planned to break into a residence by force in the commission of a felony. The record also indicates that Martinez had attempted to obtain a gun before traveling to Bopp's house. This evidence reasonably could be considered to show that the presence of a gun was foreseeable in these circumstances. The

---

[8] Virginia law is clear that "[a] jury is not required to accept the self-serving testimony of the defendant . . . but may rely on such testimony in whole, in part, or reject it completely." *Carosi v. Commonwealth*, 280 Va. 545, 554-55 (2010).

evidence was sufficient to sustain the finding that Pereira possessed the requisite intent or foresight with regards to this element of the offense.

CONCLUSION

The trial court erred in denying Pereira's request for in camera review of recorded jail calls between Martinez and his attorney. However, that error was harmless because Pereira elicited impeachment evidence during Martinez's cross-examination. Additionally, the trial court did not abuse its discretion in striking Juror L. for cause, and the evidence was sufficient to support a conviction for armed burglary. Accordingly, this Court affirms Pereira's convictions.

*Affirmed.*